**UNITED STATES, Appellee,**

v.

**Louis McVICAR, Defendant, Appellant.**

**No. 89–1377.**

United States Court of Appeals,
First Circuit.

Heard Feb. 8, 1990.

Decided June 14, 1990.

Dennis Levandoski with whom Kettle, Carter, Levandoski, Anderson & Sharon, Portland, Me., was on brief, for defendant, appellant.

Margaret D. McGaughey, Asst. U.S. Atty., Portland, Me., with whom Richard S. Cohen, U.S. Atty., Augusta, Me., and Nicholas M. Gess, Asst. U.S. Atty., Portland, Me., were on brief, for appellee.

Before BREYER, Chief Judge, and ALDRICH and TORRUELLA, Circuit Judges.

BREYER, Chief Judge.

The appellant, Louis McVicar, pled guilty to bank robbery "by force and violence, or by intimidation." 18 U.S.C. § 2113(a). After reading the presentence report, listening to McVicar's response, and consulting the Sentencing Guidelines, the district court found applicable the "career offender" guideline, a guideline that provides high sentences for one convicted of a third "crime of violence." *See* U.S.S.G. § 4B1.1; 28 U.S.C. § 994(h) (requiring the Sentencing Commission to set punishments for such offenders at levels "at or near the maximum authorized" by law). On April 3, 1989, the court sentenced McVicar under this guideline. McVicar appeals his sentence on the ground that neither his present bank robbery conviction, nor a previous "larceny from the person" conviction, count as "crime[s] of violence."

■ The short, conclusive answer to McVicar's claim in respect to his current crime is that the guidelines themselves, in commentary, list "robbery" as an example of a "crime of violence" for purposes of applying the "career offender" provision. *See* U.S.S.G. § 4B1.2, comment (n. 2) (1989); U.S.S.G. § 4B1.2, comment (n. 1) (1988). In so listing the offense the guidelines reasonably apply their own explicit definition of "crime of violence." Before November 1989, that definition (through a statutory cross-reference, *see* U.S.S.G. § 4B1.2(1) (1988)) included

> any ... offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person ... may be used....

18 U.S.C. § 16(b); *see* 18 U.S.C. §§ 3553(a)(4), 3553(a)(5) (instructing a sentencing court to consider the Sentencing Commission's guidelines and policy statements "that are in effect on the date the defendant is sentenced"). More recently, the Sentencing Commission amended the definition to include

any offense ... that ... involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(1)(ii) (1989). Robbery fits either definition. Robbery typically involves a threat of violence. One making such a threat may carry it out. Even if the threatener is only bluffing, others in the area fear his threat, and their efforts to evade the threat, to protect themselves, to apprehend the robber, or simple panic, some or all of which, in turn, may lead the robber to react violently, mean that "substantial" or "serious" risks of "physical" force or injury are typically present.

Even if we were to go beyond the guidelines' specific list of "crimes of violence" and look at the individual facts in this case, *cf. United States v. Baskin*, 886 F.2d 383, 389 (D.C.Cir.1989) (suggesting that a sentencing judge may examine actual facts even of a listed crime), we should still conclude that McVicar's crime was a "crime of violence." The presentence report says that he approached the teller window with a metallic object beneath his shirt, which the bank teller reasonably thought was a gun, and told the teller: "This is a hold-up. Give me money." As we have explained above, even if McVicar was bluffing, this conduct, typical of robbery, typically involves a "substantial" or "serious" risk of "physical" force or injury.

■ McVicar's previous Tennessee conviction for "larceny from the person" presents a somewhat closer question. If we follow the guidelines' application note instruction that was in effect at the time of McVicar's sentencing, *see* U.S.S.G. 4B1.2, comment (n. 1) (1988), a note that tells us (for an offense such as "larceny from the person" which the note does not list specifically) to look to McVicar's actual conduct, we should have no problem upholding the district court. That actual conduct, as specified in the presentence report's unchallenged description, consists of McVicar's having "accosted the victim, a 7–Eleven clerk at the time, and robbed him using a 'blank' pistol." Even were we to assume, favorably to McVicar, that we should follow the more recent guidelines' application

note, *see* U.S.S.G. § 4B1.2, comment (n. 2) (1989), and look at the conduct set forth in McVicar's indictment, it would make no difference. That is because the district court could reasonably assume (given a record that is silent on the subject and without objection from McVicar) that the Tennessee indictment set forth, roughly, the conduct just described, which McVicar admitted.

Finally, even if we assume, still more favorably to McVicar, that we should apply the recently amended application note and that the Tennessee indictment did no more than set forth the Tennessee statute, McVicar would still lose his argument. That is because, in our view, the Tennessee statute sets forth a "crime of violence" within the meaning of the career offender guideline. The statute explicitly says that the theft in issue is not simple larceny. The statute sets forth a serious penalty of three to ten years confinement "in the penitentiary;" and it specifies that the "theft must be from the person; it is not sufficient that the property be merely in the presence of the person from whom it is taken." Tenn. Code Ann. § 39–3–1106 (1988). Taking property directly from a person seems to us to run a "substantial" or "serious" risk that "physical force" or "physical injury" will follow. Traditionally,

> stealing ... property from the person has been from an early period, under the English statutes, treated as a much graver and more heinous offense than ordinary or common theft,—partly by reason of the ease with which it could be perpetrated, and the difficulty of guarding against it, and *partly because of the greater liability of endangering the person or life of the victim.*

*People v. McElroy*, 116 Cal. 583, 48 P. 718, 718 (1897). We concede that a Nevada case lists a somewhat different reason, namely the protection of the victim's "privacy." *See Terral v. State*, 84 Nev. 412, 442 P.2d 465, 466 (1968). But we do not believe the Nevada court has listed all the reasons why "larceny from the person" is a serious crime. We also concede, as McVicar points out, that "larceny from the person," unlike

robbery, typically involves no threat of violence. But, even without threats of violence, the risk of physical injury seems serious. The fact that the pickpocket's victim on occasion is unaware of the crime no more obviates the *risk* of violence than does the occasional meek compliance of the bank teller in the case of robbery.

For these reasons, the judgment of the district court is

*Affirmed.*

## APPENDIX A

*Relevant Guidelines and Statutes at the Time of McVicar's Sentencing*

U.S.S.G. § 4B1.2(1) (1988):

The term "crime of violence" as used in this provision is defined under 18 U.S.C. § 16.

18 U.S.C. § 16:

The term "crime of violence" means—

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

U.S.S.G. 4B1.2, comment (n. 1) (1988) (emphasis added):

"Crime of violence" is defined in 18 U.S.C. § 16 to mean an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or any other offense that is a felony and that by its nature involves a substantial risk that physical force against the person or property of another may be used in committing the offense. The Commission interprets this as follows: murder, manslaughter, kidnapping, aggravated assault, extortionate extension of credit, forcible sex offenses, arson, and *robbery* are covered by this provision. *Other offenses are covered only if the conduct for which the defendant was specifically convicted meets the above definition.*

For example, conviction for an escape accomplished by force or threat of injury would be covered; conviction of an escape by stealth would not be covered. Conviction for burglary of a dwelling would be covered; conviction for burglary of other structures would not be covered.

*Relevant Guidelines as Amended Effective November 1, 1989*

U.S.S.G. § 4B1.2(1) (1989):

The term "crime of violence" means any offense under federal or state law punishable by imprisonment for a term exceeding one year that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(ii) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2, comment (n. 2) (1989) (emphasis added):

"Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, *robbery*, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included where (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct *set forth in the count of which the defendant was convicted* involved use of explosives or, by its nature, presented a serious potential risk of physical injury to another.