February 11, 1993 UNITED STATES COURT OF APPEALS

 FOR THE FIRST CIRCUIT

 

No. 92-1549

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 CARLOS DE JESUS,

 Defendant, Appellant.

 

 ERRATA SHEET

 The opinion of the Court issued on January 27, 1993, is
corrected as follows:

 On page 5, line 4 "See Fiore, F.2d at [slip op. at
 
5]" should be corrected to read "See United States v. Fiore, 
 
F.2d , (1st Cir. 1992) [No. 92-1601, slip op. at 5]."

January 27, 1993

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

 

No. 92-1549

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 CARLOS DE JESUS,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Andrew A. Caffrey, Senior U.S. District Judge]
 

 

 Before

 Torruella, Selya and Stahl,

 Circuit Judges.
 

 

 Annemarie Hassett, Federal Defender Office, for appellant.
 
 Frank A. Libby, Jr., Assistant United States Attorney, with
 
whom A. John Pappalardo, United States Attorney, was on brief,
 
for the United States.

 

 

 SELYA, Circuit Judge. In this appeal, we consider
 SELYA, Circuit Judge.
 

whether larceny from the person is a crime of violence within the

meaning of the federal sentencing guidelines. Because we answer

that question affirmatively, defendant's prior conviction for

that crime qualifies as a predicate offense, requiring that we

affirm his enhanced sentence as a career offender.

I. BACKGROUND

 The career offender guideline elevates the sentencing

range of a defendant who, being at least eighteen years old and

having previously been convicted of "at least 2 prior felony

convictions of either a crime of violence or a controlled

substance offense," is found guilty of a federal felony that is

itself either a crime of violence or a controlled substance

offense. U.S.S.G. 4B1.1.1 On January 21, 1992, defendant-

appellant Carlos De Jesus pled guilty to federal narcotics

offenses in violation of 21 U.S.C. 841(a)(1), 846, 860(a)

(1988) and 18 U.S.C. 2 (1988). In the presentence

investigation report (PSI Report), the probation officer

recommended that appellant be sentenced as a career offender. In

support of the predicate offense requirement, the PSI Report

limned five prior offenses, viz., a conviction for possession of
 

 

 1Unless otherwise indicated, all references to the
sentencing guidelines are to the November 1991 version. See 18
 
U.S.C. 3553(a)(4)-(5)(1988) (instructing a sentencing court to
consider the guidelines and policy statements "in effect on the
date the defendant is sentenced"); see also United States v.
 
Harotunian, 920 F.2d 1040, 1041-42 (1st Cir. 1990) (explaining
 
that, save for any ex post facto complications, "a defendant is
 
to be punished according to the guidelines in effect at the time
of sentencing").

 3

heroin with intent to distribute, two diversionary dispositions

for assault and battery that were placed on file without a

finding of guilt, a diversionary disposition for assault and

battery that was placed on file after a finding of guilt, and a

conviction for larceny from the person.2 

 At sentencing, the district court adopted the PSI

Report's recommendation, branded appellant a career offender, and

set the guideline sentencing range (GSR) at 210-262 months.3

The court then granted a government motion filed pursuant to

U.S.S.G. 5K1.1 and departed downward in tribute to appellant's

substantial assistance, sentencing him to a 60-month term of

incarceration.

 Appellant objects to his classification as a career

offender. He acknowledges that his conviction for possessing

heroin with intent to distribute is a countable predicate

offense, but protests that there is no other. Thus, he claims

that the government failed to show the requisite pair of

predicate offenses.

II. ANALYSIS

 Although the lower court determined that De Jesus was a

career offender, it made no express finding as to which of his

past escapades constituted predicate offenses within the meaning

 

 2The first three dispositions occurred on November 24, 1987;
the last two dispositions occurred on April 10, 1990. All five
cases were prosecuted in a Massachusetts state court.

 3Both sides agree that, apart from career offender status,
the GSR would have been 46-57 months.

 4

of U.S.S.G. 4B1.1. Because appellant admits the incidence of

one predicate offense (for peddling heroin), our sole task is to

determine whether the record supports the sentencing court's

implicit finding of a second predicate offense.4 We approach

this task with an awareness that, so long as any one of the other

dispositions catalogued in the PSI Report qualifies under the

career offender rubric, De Jesus's appeal founders.

 A

 Because we believe it is relatively clearcut, we turn

first to the issue of whether appellant's conviction for larceny

from the person constitutes a predicate offense. Appellant

claims that this conviction cannot trigger career offender status

because the crime charged, a violation of Mass. Gen. L. ch. 266,

 25(b) (1990), does not constitute a crime of violence within

the meaning of the sentencing guidelines. We do not agree.

 The Sentencing Commission has defined a crime of

violence as a federal or state offense punishable by imprisonment

for more than one year that:

 (i) has as an element the use, attempted
 use, or threatened use of physical force
 against the person of another, or (ii) is
 burglary of a dwelling, arson, or extortion,

 

 4Although the lack of express findings is a complicating
factor, it does not frustrate appellate review. After all, the
question of whether a crime qualifies as a predicate offense is a
question of law and, hence, our review is plenary. See United
 
States v. Fiore, F.2d , (1st Cir. 1992) [No. 92-1601,
 
slip op. at 3]. Therefore, this appeal can proceed. We take
this opportunity, however, to emphasize that reasonably complete
findings at the trial court level invariably facilitate the
appellate task and to urge district judges to make such findings
wherever possible.

 5

 involves use of explosives, or otherwise
 involves conduct that presents a serious
 potential risk of physical injury to another.

U.S.S.G. 4B1.2(1). A formal categorical approach an approach

that looks to a prior offense's statutory provenance rather than

to its actual facts is the method of choice for determining

whether a felony constitutes a targeted crime within the meaning

of this definition. See United States v. Fiore, F.2d ,
 

 (1st Cir. 1992) [No. 92-1601, slip op. at 5]; United States
 

v. Bell, 966 F.2d 703, 704 (1st Cir. 1992); accord U.S.S.G. 
 

4B1.2, comment (n.2) (directing judicial inquiry to "the conduct

set forth (i.e., expressly charged) in the count of which the
 

defendant was convicted"); cf. Taylor v. United States, 495 U.S.
 

575, 600 (1990) (adopting categorical approach for similar

definitional inquiries under the Armed Career Criminal Act);

United States v. Doe, 960 F.2d 221, 223-24 (1st Cir. 1992)
 

(same). Thus, rather than examining the actual circumstances

underlying the earlier conviction, we examine only the statutory

formulation of the crime charged (here, larceny from the person)

to see if that crime is a crime of violence for purposes of the

career offender guideline.5

 

 5To be sure, there are certain limited circumstances in
which a court may appropriately peruse documents such as the
charging papers or jury instructions in order to flesh out a
predicate offense inquiry. See, e.g., Taylor, 495 U.S. at 602.
 
In this instance, however, we see no reason either to reach
beyond the statutory parameter or to consider the extent to which
our opinion in United States v. Harris, 964 F.2d 1234 (1st Cir.
 
1992), does or does not permit resort to the PSI Report's
depiction of the underlying events and/or the defendant's own
version of the facts as outlined in the Report's addendum.

 6

 B

 The state statute in question authorizes a prison term

of up to five years for one who "steal[s] from the person of

another." Mass. Gen. L. ch. 266, 25(b). Massachusetts law

makes clear that, in order to satisfy "the essential elements" of

the statutory definition, the taking need not be from the

victim's person so long as it is "from the presence of the

victim," that is, from "within his area of control."

Commonwealth v. Subilosky, 352 Mass. 153, 166, 224 N.E.2d 197,
 

206 (1967) (internal quotation marks and citation omitted).

Using this rendition of Massachusetts law as a doctrinal

springboard, appellant argues that his earlier conviction was not

for a "crime of violence" as that term is defined in the career

offender guideline.

 Appellant's argument has some superficial allure. 

Because actual or threatened use of force is not an element of

the offense in Massachusetts, larceny from the person does not

fit within subsection (i) of U.S.S.G. 4B1.2(1). The puzzle,

however, is not so easily solved; even if force (actual or

threatened) is not an element of the offense, a crime may still

be a crime of violence if it falls within the "otherwise" clause

of subsection (ii), that is, if it "involves conduct that

presents a serious potential risk of physical injury to another."

U.S.S.G. 4B1.2(1).

 The Sentencing Commission's commentary recites a litany

of illustrative offenses, including some that typically fall

 7

within the reach of the "otherwise" clause. See U.S.S.G. 
 

4B1.2, comment (n.2). Although larceny from the person is not

listed, we do not think the lack of enumeration is dispositive.

Expanding on the "otherwise" clause, the application notes

explain that "[o]ther offenses are included where . . . the

conduct set forth (i.e., expressly charged) in the count of which
 

the defendant was convicted . . ., by its nature, presented a

serious potential risk of physical injury to another." Id.
 

Against this backdrop, the lens of judicial inquiry narrows to a

determination of whether larceny from the person is a category of

crime that, by its nature, presents a substantial risk of

personal injury even though its statutorily defined elements do

not include the use or threat of force.

 Appellant contends that because the crime potentially

embraces a broad range of non-violent conduct, see, e.g.,
 

Commonwealth v. Dimond, 57 Mass. 235, 236-38 (1849) (holding
 

that, in certain circumstances, fraud can be prosecuted under the

statute), larceny from the person cannot be shoehorned into the

contours of the "otherwise" clause. We think that Taylor and its
 

progeny undermine this contention. The Taylor Court, invoking a
 

categorical approach, held that any state offense containing the

basic elements of burglary, "regardless of its exact definition

or label," Taylor, 495 U.S. at 599, constituted a "violent
 

felony" for purposes of sentencing enhancement under the Armed

 8

Career Criminal Act (ACCA), as amended, 18 U.S.C. 924(e)

(1988).6 Hence, not only "especially dangerous" burglaries, but

also "ordinary burglaries," that is, "run-of-the-mill burglaries

involving an unarmed offender, an unoccupied building, and no use

or threat of force" present "a sufficiently 'serious potential

risk' to count towards enhancement." Id. at 597.
 

 The linchpin of the taxonomy, then, is not the breadth

of the statutory sweep but the degree of risk, expressed in terms

of the probability of physical harm presented by the mine-run of

conduct that falls within the heartland of the statute. Applying

this test in the post-Taylor era, we have repeatedly classified
 

as crimes of violence offenses in which actual or threatened

force against another person is likely, although by no means

certain. In a case hitting close to the mark, we determined that

a conviction for larceny from the person under Tennessee law

constituted a crime of violence within the meaning of the career

offender guideline. See United States v. McVicar, 907 F.2d 1, 2
 

(1st Cir. 1990). We recognized that, although larceny from the

person "typically involves no threat of violence," id. at 3, the
 

 

 6The definition of "violent felony" in the ACCA's sentence
enhancement provision is virtually identical to the definition of
"crime of violence" under U.S.S.G. 4B1.2. Indeed, the former
definition is widely regarded as the source of the latter
definition. See Fiore, F.2d at n.2 [slip op. at 5 n.2];
 
United States v. Preston, 910 F.2d 81, 86 n.6 (3d Cir. 1990),
 
cert. denied, 111 S. Ct. 1002 (1991); U.S.S.G. App. C, amend.
 
268, at C.139 (Nov. 1989). For that reason, we have routinely
held that decisions interpreting the ACCA constitute persuasive
authority upon which a court construing the career offender
guideline may rely. See Fiore, F.2d at n.2 [slip op. at
 
5 n.2]; Bell, 966 F.2d at 705.
 

 9

risk of ensuing struggle is omnipresent. Thus, we concluded that

"[t]aking property directly from a person . . . run[s] a

'substantial' or 'serious' risk that 'physical force' or

'physical injury' will follow." Id. at 2. Of course, as
 

appellant points out, the Tennessee statute at issue in McVicar
 

differs from the Massachusetts statute in that the former

requires theft directly from the victim's person. See 1975 Tenn.
 

Pub. Acts 367, 368. But, because the Massachusetts statute

requires theft from either the victim's person or the victim's

immediate vicinity, see Subilosky, 352 Mass. at 166, a
 

sufficiently serious potential for confrontation and physical

injury invariably exists. Hence, we believe that the proffered

distinction between the Tennessee and Massachusetts statutes,

though it exists, does not meaningfully differentiate the two

cases.

 Our other decisions point in the same direction. In

Fiore, we held that breaking and entering into a commercial
 

structure comprises a crime of violence under the career offender

guideline. See Fiore, F.2d at [slip op. at 9]
 

(concluding that breaking into a commercial building "poses a

potential for episodic violence so substantial as to bring such

burglaries within the . . . crime of violence ambit"). In United
 

States v. Patterson, 882 F.2d 595 (1st Cir. 1989), cert. denied,
 

493 U.S. 1027 (1990), an ACCA case, we held that "an unauthorized

entry of the premises of another" portended a sufficient risk of

harm to energize the career criminal statute. Id. at 604. If
 

 10

breaking and entering an abandoned warehouse poses a sufficiently

"serious potential risk of physical injury" to trigger career

offender status, we fail to see how larceny from the person that

necessarily involves theft from within the victim's immediate

presence can be thought to pose a significantly lesser risk of

violent eruption.

 To say more would be to paint the lily. We rule that,

as the crime of larceny from the person under Massachusetts law

bears an inherent risk of violent outbreak, it constitutes a

crime of violence within the meaning of the career offender

provisions of the federal sentencing guidelines. Thus,

appellant's April 10, 1990 conviction on a charge of larceny from

the person could properly be counted as a predicate offense.

III. CONCLUSION

 We need go no further.7 Appellant's larceny

conviction, taken in conjunction with the earlier controlled

substance offense, comprise the two predicate offenses required

for career offender status. It follows inexorably, as night is

said to follow day, that appellant received his due in the

district court.

Affirmed.
 

 

 7Inasmuch as U.S.S.G. 4B1.1 requires only two predicate
offenses as a condition precedent to its operation, any attempt
to evaluate the remaining predicate offense candidates enumerated
in the PSI Report would be supererogatory. Therefore, we take no
view as to the sufficiency of those dispositions under the
version of the career offender guideline applicable to this case.

 11