USCA1 Opinion

 

 February 11, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 92-1549 UNITED STATES OF AMERICA, Appellee, v. CARLOS DE JESUS, Defendant, Appellant. _________________________ ERRATA SHEET ERRATA SHEET The opinion of the Court issued on January 27, 1993, is corrected as follows: On page 5, line 4 "See Fiore, ___ F.2d at ___ [slip op. at ___ _____ 5]" should be corrected to read "See United States v. Fiore, ___ ___ ______________ _____ F.2d ___, ___ (1st Cir. 1992) [No. 92-1601, slip op. at 5]." January 27, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 92-1549 UNITED STATES OF AMERICA, Appellee, v. CARLOS DE JESUS, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Andrew A. Caffrey, Senior U.S. District Judge] __________________________ __________________________ Before Torruella, Selya and Stahl, Circuit Judges. ______________ __________________________ Annemarie Hassett, Federal Defender Office, for appellant. _________________ Frank A. Libby, Jr., Assistant United States Attorney, with ___________________ whom A. John Pappalardo, United States Attorney, was on brief, ___________________ for the United States. __________________________ __________________________ SELYA, Circuit Judge. In this appeal, we consider SELYA, Circuit Judge. _____________ whether larceny from the person is a crime of violence within the meaning of the federal sentencing guidelines. Because we answer that question affirmatively, defendant's prior conviction for that crime qualifies as a predicate offense, requiring that we affirm his enhanced sentence as a career offender. I. BACKGROUND I. BACKGROUND The career offender guideline elevates the sentencing range of a defendant who, being at least eighteen years old and having previously been convicted of "at least 2 prior felony convictions of either a crime of violence or a controlled substance offense," is found guilty of a federal felony that is itself either a crime of violence or a controlled substance offense. U.S.S.G. 4B1.1.1 On January 21, 1992, defendant- appellant Carlos De Jesus pled guilty to federal narcotics offenses in violation of 21 U.S.C. 841(a)(1), 846, 860(a) (1988) and 18 U.S.C. 2 (1988). In the presentence investigation report (PSI Report), the probation officer recommended that appellant be sentenced as a career offender. In support of the predicate offense requirement, the PSI Report limned five prior offenses, viz., a conviction for possession of ____ ____________________ 1Unless otherwise indicated, all references to the sentencing guidelines are to the November 1991 version. See 18 ___ U.S.C. 3553(a)(4)-(5)(1988) (instructing a sentencing court to consider the guidelines and policy statements "in effect on the date the defendant is sentenced"); see also United States v. ___ ____ _____________ Harotunian, 920 F.2d 1040, 1041-42 (1st Cir. 1990) (explaining __________ that, save for any ex post facto complications, "a defendant is __ ____ _____ to be punished according to the guidelines in effect at the time of sentencing"). 3 heroin with intent to distribute, two diversionary dispositions for assault and battery that were placed on file without a finding of guilt, a diversionary disposition for assault and battery that was placed on file after a finding of guilt, and a conviction for larceny from the person.2 At sentencing, the district court adopted the PSI Report's recommendation, branded appellant a career offender, and set the guideline sentencing range (GSR) at 210-262 months.3 The court then granted a government motion filed pursuant to U.S.S.G. 5K1.1 and departed downward in tribute to appellant's substantial assistance, sentencing him to a 60-month term of incarceration. Appellant objects to his classification as a career offender. He acknowledges that his conviction for possessing heroin with intent to distribute is a countable predicate offense, but protests that there is no other. Thus, he claims that the government failed to show the requisite pair of predicate offenses. II. ANALYSIS II. ANALYSIS Although the lower court determined that De Jesus was a career offender, it made no express finding as to which of his past escapades constituted predicate offenses within the meaning ____________________ 2The first three dispositions occurred on November 24, 1987; the last two dispositions occurred on April 10, 1990. All five cases were prosecuted in a Massachusetts state court. 3Both sides agree that, apart from career offender status, the GSR would have been 46-57 months. 4 of U.S.S.G. 4B1.1. Because appellant admits the incidence of one predicate offense (for peddling heroin), our sole task is to determine whether the record supports the sentencing court's implicit finding of a second predicate offense.4 We approach this task with an awareness that, so long as any one of the other dispositions catalogued in the PSI Report qualifies under the career offender rubric, De Jesus's appeal founders. A A Because we believe it is relatively clearcut, we turn first to the issue of whether appellant's conviction for larceny from the person constitutes a predicate offense. Appellant claims that this conviction cannot trigger career offender status because the crime charged, a violation of Mass. Gen. L. ch. 266, 25(b) (1990), does not constitute a crime of violence within the meaning of the sentencing guidelines. We do not agree. The Sentencing Commission has defined a crime of violence as a federal or state offense punishable by imprisonment for more than one year that: (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (ii) is burglary of a dwelling, arson, or extortion, ____________________ 4Although the lack of express findings is a complicating factor, it does not frustrate appellate review. After all, the question of whether a crime qualifies as a predicate offense is a question of law and, hence, our review is plenary. See United ___ ______ States v. Fiore, F.2d , (1st Cir. 1992) [No. 92-1601, ______ _____ ____ ___ ___ slip op. at 3]. Therefore, this appeal can proceed. We take this opportunity, however, to emphasize that reasonably complete findings at the trial court level invariably facilitate the appellate task and to urge district judges to make such findings wherever possible. 5 involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another. U.S.S.G. 4B1.2(1). A formal categorical approach an approach that looks to a prior offense's statutory provenance rather than to its actual facts is the method of choice for determining whether a felony constitutes a targeted crime within the meaning of this definition. See United States v. Fiore, F.2d , ___ _____________ _____ ____ ____ ___ (1st Cir. 1992) [No. 92-1601, slip op. at 5]; United States _____________ v. Bell, 966 F.2d 703, 704 (1st Cir. 1992); accord U.S.S.G. ____ ______ 4B1.2, comment (n.2) (directing judicial inquiry to "the conduct set forth (i.e., expressly charged) in the count of which the ____ defendant was convicted"); cf. Taylor v. United States, 495 U.S. ___ ______ _____________ 575, 600 (1990) (adopting categorical approach for similar definitional inquiries under the Armed Career Criminal Act); United States v. Doe, 960 F.2d 221, 223-24 (1st Cir. 1992) ______________ ___ (same). Thus, rather than examining the actual circumstances underlying the earlier conviction, we examine only the statutory formulation of the crime charged (here, larceny from the person) to see if that crime is a crime of violence for purposes of the career offender guideline.5 ____________________ 5To be sure, there are certain limited circumstances in which a court may appropriately peruse documents such as the charging papers or jury instructions in order to flesh out a predicate offense inquiry. See, e.g., Taylor, 495 U.S. at 602. ___ ____ ______ In this instance, however, we see no reason either to reach beyond the statutory parameter or to consider the extent to which our opinion in United States v. Harris, 964 F.2d 1234 (1st Cir. _____________ ______ 1992), does or does not permit resort to the PSI Report's depiction of the underlying events and/or the defendant's own version of the facts as outlined in the Report's addendum. 6 B B The state statute in question authorizes a prison term of up to five years for one who "steal[s] from the person of another." Mass. Gen. L. ch. 266, 25(b). Massachusetts law makes clear that, in order to satisfy "the essential elements" of the statutory definition, the taking need not be from the victim's person so long as it is "from the presence of the victim," that is, from "within his area of control." Commonwealth v. Subilosky, 352 Mass. 153, 166, 224 N.E.2d 197, ____________ _________ 206 (1967) (internal quotation marks and citation omitted). Using this rendition of Massachusetts law as a doctrinal springboard, appellant argues that his earlier conviction was not for a "crime of violence" as that term is defined in the career offender guideline. Appellant's argument has some superficial allure. Because actual or threatened use of force is not an element of the offense in Massachusetts, larceny from the person does not fit within subsection (i) of U.S.S.G. 4B1.2(1). The puzzle, however, is not so easily solved; even if force (actual or threatened) is not an element of the offense, a crime may still be a crime of violence if it falls within the "otherwise" clause of subsection (ii), that is, if it "involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. 4B1.2(1). The Sentencing Commission's commentary recites a litany of illustrative offenses, including some that typically fall 7 within the reach of the "otherwise" clause. See U.S.S.G. ___ 4B1.2, comment (n.2). Although larceny from the person is not listed, we do not think the lack of enumeration is dispositive. Expanding on the "otherwise" clause, the application notes explain that "[o]ther offenses are included where . . . the conduct set forth (i.e., expressly charged) in the count of which ____ the defendant was convicted . . ., by its nature, presented a serious potential risk of physical injury to another." Id. ___ Against this backdrop, the lens of judicial inquiry narrows to a determination of whether larceny from the person is a category of crime that, by its nature, presents a substantial risk of personal injury even though its statutorily defined elements do not include the use or threat of force. Appellant contends that because the crime potentially embraces a broad range of non-violent conduct, see, e.g., ___ ____ Commonwealth v. Dimond, 57 Mass. 235, 236-38 (1849) (holding ____________ ______ that, in certain circumstances, fraud can be prosecuted under the statute), larceny from the person cannot be shoehorned into the contours of the "otherwise" clause. We think that Taylor and its ______ progeny undermine this contention. The Taylor Court, invoking a ______ categorical approach, held that any state offense containing the basic elements of burglary, "regardless of its exact definition or label," Taylor, 495 U.S. at 599, constituted a "violent ______ felony" for purposes of sentencing enhancement under the Armed 8 Career Criminal Act (ACCA), as amended, 18 U.S.C. 924(e) (1988).6 Hence, not only "especially dangerous" burglaries, but also "ordinary burglaries," that is, "run-of-the-mill burglaries involving an unarmed offender, an unoccupied building, and no use or threat of force" present "a sufficiently 'serious potential risk' to count towards enhancement." Id. at 597. ___ The linchpin of the taxonomy, then, is not the breadth of the statutory sweep but the degree of risk, expressed in terms of the probability of physical harm presented by the mine-run of conduct that falls within the heartland of the statute. Applying this test in the post-Taylor era, we have repeatedly classified ______ as crimes of violence offenses in which actual or threatened force against another person is likely, although by no means certain. In a case hitting close to the mark, we determined that a conviction for larceny from the person under Tennessee law constituted a crime of violence within the meaning of the career offender guideline. See United States v. McVicar, 907 F.2d 1, 2 ___ _____________ _______ (1st Cir. 1990). We recognized that, although larceny from the person "typically involves no threat of violence," id. at 3, the ___ ____________________ 6The definition of "violent felony" in the ACCA's sentence enhancement provision is virtually identical to the definition of "crime of violence" under U.S.S.G. 4B1.2. Indeed, the former definition is widely regarded as the source of the latter definition. See Fiore, F.2d at n.2 [slip op. at 5 n.2]; ___ _____ ___ ___ United States v. Preston, 910 F.2d 81, 86 n.6 (3d Cir. 1990), ______________ _______ cert. denied, 111 S. Ct. 1002 (1991); U.S.S.G. App. C, amend. ____ ______ 268, at C.139 (Nov. 1989). For that reason, we have routinely held that decisions interpreting the ACCA constitute persuasive authority upon which a court construing the career offender guideline may rely. See Fiore, F.2d at n.2 [slip op. at ___ _____ ___ ___ 5 n.2]; Bell, 966 F.2d at 705. ____ 9 risk of ensuing struggle is omnipresent. Thus, we concluded that "[t]aking property directly from a person . . . run[s] a 'substantial' or 'serious' risk that 'physical force' or 'physical injury' will follow." Id. at 2. Of course, as ___ appellant points out, the Tennessee statute at issue in McVicar _______ differs from the Massachusetts statute in that the former requires theft directly from the victim's person. See 1975 Tenn. ___ Pub. Acts 367, 368. But, because the Massachusetts statute requires theft from either the victim's person or the victim's immediate vicinity, see Subilosky, 352 Mass. at 166, a ___ _________ sufficiently serious potential for confrontation and physical injury invariably exists. Hence, we believe that the proffered distinction between the Tennessee and Massachusetts statutes, though it exists, does not meaningfully differentiate the two cases. Our other decisions point in the same direction. In Fiore, we held that breaking and entering into a commercial _____ structure comprises a crime of violence under the career offender guideline. See Fiore, ___ F.2d at ___ [slip op. at 9] ___ _____ (concluding that breaking into a commercial building "poses a potential for episodic violence so substantial as to bring such burglaries within the . . . crime of violence ambit"). In United ______ States v. Patterson, 882 F.2d 595 (1st Cir. 1989), cert. denied, ______ _________ _____ ______ 493 U.S. 1027 (1990), an ACCA case, we held that "an unauthorized entry of the premises of another" portended a sufficient risk of harm to energize the career criminal statute. Id. at 604. If ___ 10 breaking and entering an abandoned warehouse poses a sufficiently "serious potential risk of physical injury" to trigger career offender status, we fail to see how larceny from the person that necessarily involves theft from within the victim's immediate presence can be thought to pose a significantly lesser risk of violent eruption. To say more would be to paint the lily. We rule that, as the crime of larceny from the person under Massachusetts law bears an inherent risk of violent outbreak, it constitutes a crime of violence within the meaning of the career offender provisions of the federal sentencing guidelines. Thus, appellant's April 10, 1990 conviction on a charge of larceny from the person could properly be counted as a predicate offense. III. CONCLUSION III. CONCLUSION We need go no further.7 Appellant's larceny conviction, taken in conjunction with the earlier controlled substance offense, comprise the two predicate offenses required for career offender status. It follows inexorably, as night is said to follow day, that appellant received his due in the district court. Affirmed. Affirmed. ________ ____________________ 7Inasmuch as U.S.S.G. 4B1.1 requires only two predicate offenses as a condition precedent to its operation, any attempt to evaluate the remaining predicate offense candidates enumerated in the PSI Report would be supererogatory. Therefore, we take no view as to the sufficiency of those dispositions under the version of the career offender guideline applicable to this case. 11