USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 93-1769 UNITED STATES OF AMERICA, Appellant, v. HOWARD T. WINTER, Defendant, Appellee. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] ___________________ _________________________ Before Torruella, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Selya, Circuit Judge. _____________ _________________________ Fred M. Wyshak, Jr., Assistant United States Attorney, with ___________________ whom A. John Pappalardo, United States Attorney, was on brief, ___________________ for appellant. Richard M. Egbert, with whom MaryEllen Kelleher was on ___________________ ___________________ brief, for appellee. _________________________ April 25, 1994 _________________________ SELYA, Circuit Judge. It is common wisdom that the SELYA, Circuit Judge. _____________ past is prologue, foreshadowing the future. When convicted criminals rise to be sentenced in a federal court, the career offender guideline, U.S.S.G. 4B1.1, imbues that aphorism with a special meaning.1 In such a setting, however, all past crimes are not regarded as equal; the guideline is fueled only by previous felony convictions for crimes of violence and controlled substance offenses. See id. ___ ___ The case before us requires that we determine whether particular convictions attributable to certain racketeering activities constitute crimes of violence within the purview of this guideline. Because we agree with the district court that they do not, we affirm the sentence imposed below. I. I. __ Travel of the Case Travel of the Case __________________ On May 17, 1993, defendant-appellee Howard T. Winter pleaded guilty to one count of conspiracy to possess cocaine with intent to distribute, see 21 U.S.C. 841(a)(1), and five counts ___ of aiding and abetting the same offense, see 18 U.S.C. 2. The ___ district court, which had ruled out the career offender guideline during a special pre-plea hearing, imposed a ten-year incarcerative sentence. It is undisputed that, had the court ____________________ 1The November 1992 edition of the guidelines applies in this case. See United States v. Harotunian, 920 F.2d 1040, 1041-42 ___ _____________ __________ (1st Cir. 1990) (explaining that the guidelines in effect at the time of sentencing control unless ex post facto considerations prohibit their use). Hence, all references herein are to that edition. 2 employed the career offender guideline, a significantly greater sentence would have been mandated. The government appeals pursuant to 18 U.S.C. 3742(b)(2). II. II. ___ The Problem The Problem ___________ Under the sentencing guidelines, career offender status attaches if (1) the defendant achieved the age of majority before committing the offense of conviction, (2) that offense is a felony which can itself be characterized as either a crime of violence or controlled substance offense, and (3) the defendant's criminal history reflects a minimum of two prior felony convictions (known colloquially as "predicate offenses") for either crimes of violence or crimes involving controlled substances. See U.S.S.G. 4B1.1. In this case, defendant ___ concedes that most but not all of these preconditions obtain: he committed the offense of conviction more than four decades after turning eighteen; that offense is a controlled substance offense; and he labors under the burden of a prior conviction for extortion a crime that is considered a crime of violence, see ___ United States v. DeLuca, ___ F.3d ___, ___ (1st Cir. 1994) [No. _____________ ______ 93-1773, slip op. at 3-6]; see also U.S.S.G. 4B1.2(1)(ii) ___ ____ (enumerating certain crimes of violence and listing extortion as one of them). The nub of the case is the defendant's insistence that his prior criminal history does not include a second predicate 3 offense. In the court below, the government nominated a candidate to fill out the slate a racketeering indictment that resulted in defendant's conviction in 1979, after trial, for an amalgam of offenses, namely, engaging in racketeering activity (horse race fixing), see 18 U.S.C. 1962(c), conspiracy to ___ engage in such activity, see 18 U.S.C. 1962(d), sports bribery, ___ see 18 U.S.C. 224, and travel in aid of racketeering (horse ___ race fixing), see 18 U.S.C. 1952(a).2 The lower court did not ___ think the government's candidate qualified for election to the "crime of violence" ranks, notwithstanding the government's claim that strong-arm tactics were standard fare in the racketeering and racketeering-related activities over which Winter presided. Consequently, the court decreed that, for want of a second predicate offense, the career offender guideline did not pertain. The instant appeal turns on the appropriateness of categorizing at least one of the 1979 offenses as a crime of violence. Whether a conviction for a particular type of crime qualifies as a predicate offense presents a purely legal question, sparking de novo review. See United States v. De __ ____ ___ _____________ __ Jesus, 984 F.2d 21, 23 n.4 (1st Cir. 1993); United States v. _____ ______________ Fiore, 983 F.2d 1, 2 (1st Cir. 1992), cert. denied, 113 S. Ct. _____ _____ ______ 1830 (1993). III. III. ____ ____________________ 2The parties treat the verdicts that found defendant guilty on these counts as evidencing convictions for each of the four offenses described in the text. We emulate their example. And we sometimes refer to these several crimes, collectively, as "the 1979 offenses." 4 Crimes of Violence Crimes of Violence __________________ To constitute a crime of violence, a felony must fit into one of several pigeonholes. To be specific, a crime of violence is any state or federal offense punishable by more than one year in prison that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. 4B1.2(1)(i), or (2) reposes on a short list of specially enumerated crimes such as "burglary of a dwelling, arson, or extortion," U.S.S.G. 4B1.2(1)(ii), or (3) "involves use of explosives," id., or (4) "otherwise involves conduct that ___ presents a serious potential risk of physical injury to another," id. ___ Determining whether a previous conviction represents a crime of violence necessitates a formal categorical approach. See DeLuca, ___ F.3d at ___ [slip op. at 5]; De Jesus, 984 F.2d ___ ______ _________ at 23; United States v. Bell, 966 F.2d 703, 704 (1st Cir. 1992); _____________ ____ Fiore, 983 F.2d at 3; see also Taylor v. United States, 495 U.S. _____ ___ ____ ______ _____________ 575, 600 (1990) (adopting categorical approach for analogous determination under Armed Career Criminal Act); United States v. _____________ Doe, 960 F.2d 221, 223-24 (1st Cir. 1992) (same).3 As a rule, ___ this type of approach is restricted to an examination of how the legislature has defined the crime, without any concomitant ____________________ 3Given the substantial similarity between the Armed Career Criminal Act's definition of "violent felony," 18 U.S.C. 924(e)(2)(B), and the Sentencing Commission's definition of "crime of violence," U.S.S.G. 4B1.2(1), authority interpreting one phrase frequently is found to be persuasive in interpreting the other phrase. See, e.g., De Jesus, 984 F.2d at ___ ____ ________ 24 n.6; Bell, 966 F.2d at 704. ____ 5 inquiry into the details of the defendant's actual criminal conduct. See DeLuca, ___ F.3d at ___ [slip op. at 5]; De Jesus, ___ ______ ________ 984 F.2d at 23; Fiore, 983 F.2d at 3; see also Taylor, 495 U.S. _____ ___ ____ ______ at 600. Nevertheless, "there are certain limited circumstances in which some investigation beyond the formal nature of the charge may be warranted." DeLuca, ___ F.3d at ___ [slip op. at 5 ______ n.3]; accord Taylor, 495 U.S. at 602; Doe, 960 F.2d at 224. For ______ ______ ___ example, if the statutory description is inscrutable, or if it blankets both violent and non-violent crimes, a court may peek beneath the coverlet. See, e.g., United States v. Harris, 965 ___ ____ _____________ ______ F.2d 1234, 1235 (1st Cir. 1992) (employing similar exception in an ACCA case); see also Taylor, 495 U.S. at 602-03. ___ ____ ______ These principles inform our treatment of the instant case. Here, the first three avenues to dubbing the 1979 offenses crimes of violence are dead ends; the government concedes as, indeed, it must that no count of conviction was for a felony of which physical force is an element, or for a felony listed by name in the career offender guideline, or for a felony involving the use of explosives. Thus, the issue before us hinges on whether any of the counts of conviction, considered from a categorical standpoint, can be said to "involve[] conduct that presents a serious potential risk of physical injury to another." U.S.S.G. 4B1.2(1)(ii); see also U.S.S.G. 4B1.2, comment. ___ ____ n.2(B). IV. IV. ___ Analysis Analysis ________ 6 A. A. __ The label "racketeering," though pejorative, does not shed much light on whether the activity in question poses (or fails to pose) a serious potential risk of violence. After all, racketeering comes in many shapes and sizes, and covers a wide range of activities. Those activities are uniformly nefarious and almost invariably nasty but they are not necessarily violent.4 One is reminded of the label "conspiracy," a label so encompassing that it "says next to nothing about the underlying nature of the crime," and, therefore, gives a court no real insight into whether a conviction bearing the label can be classified as a crime of violence. Fiore, 983 F.2d at 3. Since _____ the statutory language describing racketeering, taken alone, tells us so little, we can only conclude that convictions for racketeering sometimes will constitute predicate offenses and sometimes will not. It follows, a fortiori, that the same is _ ________ true vis-a-vis convictions for conspiracy to engage in racketeering. Because crimes of this androgynous sort, not unlike chameleons, "will necessarily take on the characteristics and coloration of [their] environment," id. (discussing general ___ ____________________ 4The RICO statute makes it unlawful for a person to conduct the affairs of any enterprise affecting interstate commerce "through a pattern of racketeering activity or collection of unlawful debt," 18 U.S.C. 1962(c), or to conspire to that end, 18 U.S.C. 1962(d). The statute defines the term "racketeering activity" broadly, see 18 U.S.C. 1961(1), with the result that ___ the term includes activities ranging from murder (perhaps the paradigmatic crime of violence) to wire fraud (a good example of a crime that has never been considered a crime of violence). 7 conspiracy), some exploration of that environment must be undertaken. Yet, a caveat is in order: even where, as here, the category limned in the statute is an inexact semantic construct, warranting further inquiry, the task of classification continues to demand a categorical as opposed to a fact-sensitive analysis. This means that if previous convictions for racketeering or racketeering conspiracy are in issue, a court seeking to ascertain the appropriateness of predicate offense treatment under Taylor principles must ask categorically oriented questions ______ such as: "Racketeering by what means?" "Racketeering to what end?" And in answering these questions, the court should not plunge into the details of a particular defendant's conduct, but, rather, again in fidelity to Taylor principles, should merely ______ assess the nature and object of the racketeering activity as described in the indictment and fleshed out in the jury instructions. See Taylor, 495 U.S. at 602; De Jesus, 984 F.2d at ___ ______ ________ 23 n.5. This methodology makes good sense, for it cabins further inquiry in keeping with its categorical roots, permitting the court to take a predetermined sample of the earlier case and evaluate its composition without at the same time inviting the judicial equivalent of an archaeological dig. We turn, therefore, to the charging papers and jury instructions in the 1979 case to ascertain the nature and object of the racketeering 8 activity.5 B. B. __ The earlier indictment identified the "racketeering activity" with which Winter was charged as "horse race fixing," and described the offenses comprising the alleged pattern of racketeering activity as sports bribery, see 18 U.S.C. 224, and ___ travel in aid of racketeering, see 18 U.S.C. 1952(a)(3). This ___ format creates two possible pathways to finding that the 1979 offenses are crimes of violence. We explore each of them. 1. Sports Bribery. Sports bribery is a discrete, 1. Sports Bribery. ______________ meaningful rubric, itself susceptible of categorical analysis; therefore, we need look no further than the language of the statute.6 Given that wording, it is certainly possible that ________ sports bribery can bring violence into play but that is not the critical determinant. A categorical approach is not concerned with testing either the outer limits of statutory language or the myriad of possibilities girdled by that language; instead, a categorical approach is concerned with the usual type of conduct that the statute purposes to proscribe. See De Jesus, 984 F.2d ___ _________ at 24. Thus, a court asked to determine whether an offense is (or is not) a crime of violence within the meaning of the ____________________ 5This analysis does double duty in the present case because it also serves to probe the status of the remaining counts of conviction as crimes of violence vel non. ___ ___ 6The relevant statute criminalizes interstate schemes "to influence, in any way, by bribery, any sporting contest, with knowledge that the purpose of [the particular] scheme is to influence by bribery that contest . . . ." 18 U.S.C. 224(a). 9 "otherwise" clause of the career offender guideline, U.S.S.G. 4B1.2(1)(ii), must focus on "the degree of risk, expressed in terms of the probability of physical harm presented by the mine- run of conduct that falls within the heartland of the statute." De Jesus, 984 F.2d at 24. ________ Under this standard, the government's argument cannot prosper. Sports bribery, in general, simply lacks the "inherent __ _______ risk of violent outbreak" necessary to justify classifying it as a crime of violence. Id. at 25; see also Fiore, 983 F.2d at 4 ___ ___ ____ _____ (to come within the crime of violence ambit, a crime, viewed generically, must pose a substantial potential for episodic violence); Doe, 960 F.2d at 224-25 (finding "felon-in-possession" ___ convictions not to qualify as predicate offenses under ACCA because such convictions do not usually involve violent conduct). Since there is no sound basis for saying that violence is a normal, usual, or customary concomitant of sports bribery, the crime is not a crime of violence. 2. Travel in Aid of Racketeering. The statute 2. Travel in Aid of Racketeering. ________________________________ underlying the Travel Act counts outlaws travel in interstate commerce with intent to - (1) distribute the proceeds of any unlawful activity; or (2) commit any crime of violence to further any unlawful activity; or (3) otherwise promote, manage, establish, carry on, or facilitate the promotion management, establishment, or carrying on, of any unlawful activity, . . . . 10 18 U.S.C. 1952(a).7 Based on this statute, the government maintains that, because the Travel Act encompasses both violent and non-violent offenses, the court below should have delved into defendant's actual conduct to determine if his offenses constituted crimes of violence. We do not agree. To be sure, the government is correct in stating that the Travel Act reaches violent as well as non-violent conduct. Compare id. 1952(a)(2) (proscribing travel with intent to _______ ___ "commit any crime of violence to further any unlawful activity") with id. 1952(a)(1),(3) (proscribing generically ____ ___ non-violent conduct). But the statute's breadth does not give an inquiring court license to roam at will through the record of each individual case. Rather, Taylor demands that a court poised ______ at such a crossroads consult a limited array of materials principally the indictment and jury instructions in determining if the offense can be classified as a crime of violence.8 See ___ Taylor, 495 U.S. at 602-03; see also Harris, 964 F.2d at 1235; ______ ___ ____ ______ Doe, 960 F.2d at 224-25. ___ ____________________ 7For purposes of the Travel Act, the term "unlawful activity" is defined to include a salmagundi of criminal conduct, ranging from the violent (e.g., arson) to the non-violent (e.g., ____ ____ violation of state liquor laws). See 18 U.S.C. 1952(b)(i)(1) - ___ (3). Bribery is specifically enumerated. See id. ___ ___ 1952(b)(i)(2). 8Although we have occasionally approved resort to a presentence report in this connection, we have done so only in cases in which the defendant entered a guilty plea, with the result that no jury instructions were available for retrospective review. See, e.g., Harris, 964 F.2d at 1235-36; United States v. ___ ____ ______ _____________ Bregnard, 951 F.2d 457, 459-60 (1st Cir. 1991), cert. denied, 112 ________ _____ ______ S. Ct. 2939 (1992). Because a jury convicted Winter on the 1979 offenses after a full trial, the exception is inapposite here. 11 In this instance, the permitted review establishes that, under applicable Taylor principles, the Travel Act counts ______ do not qualify as crimes of violence.9 Those counts charged Winter with commissioning travel to assist in "effecting by bribery the outcome of . . . horse races." Although fixing horse races is antisocial conduct that may on occasion utilize violence as a tool, it does not carry with it an inherent risk of violent outbreak sufficient to merit classification as a crime of violence. In other words, because violence is not a usual _____ accouterment of horse race fixing, the degree of risk, expressed in terms of the probability of physical harm, associated with the mine-run of conduct that comprises the heartland of the statute is relatively low. And because that is so, the "otherwise" clause in the career offender guideline, U.S.S.G. 4B1.2(1)(ii), does not apply. There is also a second reason why the two Travel Act counts are poor candidates for inclusion as predicate offenses. Neither of these counts invoked the Travel Act generally; their language focused single-mindedly on clause (3), 18 U.S.C. 1952(a)(3), a subsection of the Travel Act that criminalizes ____________________ 9Counts 22 and 23 of the indictment, which form the basis for the government's contention, in terms charge that Winter violated the Travel Act on two different dates in that he and another caused one Anthony Ciulla "willfully to travel in interstate commerce . . . said defendants intending to promote, manage, establish, carry on and facilitate . . . an unlawful activity, being bribery in violation of Pennsylvania Cons. Stat. Ann. Section 4109, and did thereafter perform, attempt to perform and cause acts to promote, manage, establish, carry on and facilitate . . . an unlawful activity, to wit: affecting by bribery the outcome of pari-mutuel thoroughbred horse races." 12 predominantly non-violent conduct, rather than clause (2), 18 U.S.C. 1952(a)(2), a subsection that criminalizes predominantly violent conduct. To convict on the Travel Act counts, therefore, the jury was required only to find that Winter used bribes to rig horse races and caused Ciulla to travel in aid of the scheme. The charges did not require a finding that the offense involved violence in any way, shape, or form. The jury instructions bear this out; in briefing the jurors on the Travel Act counts, the trial judge defined those counts in the vernacular of section 1952(a)(3), abjured any suggestion that the counts implicated section 1952(a)(2), and identified bribery as the unlawful activity to which the travel was directed. Because the defendant was charged with and convicted of violating the Travel Act under the statute's non- violent alternative, the Travel Act counts did not serve to transmogrify the 1979 offenses into crimes of violence. 3. The Pennsylvania Statute. The government has 3. The Pennsylvania Statute. _________________________ another string to its bow. Because the Travel Act counts mention the violation of a Pennsylvania statute, see supra note 9, and ___ _____ that statute includes violent as well as non-violent methods of perpetrating the specified crime,10 the government hypothesizes that we can explore whether Winter actually conducted the bribery ____________________ 10In pertinent part, the state statute outlaws the rigging of publicly exhibited contests in circumstances wherein a person "confers . . . any benefit upon, or threatens any injury to, a participant, official or other person associated with the contest or exhibition; or (2) tampers with any person, animal, or thing." 18 Pa. Cons. Stat. Ann. 4109(a). 13 scheme in a brutal manner. This reasoning is specious. Winter was neither charged with, nor convicted of, violating the Pennsylvania statute; and the indictment does not embrace the language of that statute. Taylor and its progeny in no way suggest that a reviewing court ______ should investigate conduct ranging outside the counts of conviction for purposes of determining career offender status. Indeed, the case law teaches the opposite lesson. See Taylor, ___ ______ 495 U.S. at 602; Doe, 960 F.2d at 224; United States v. Leavitt, ___ _____________ _______ 925 F.2d 516, 517-18 (1st Cir. 1991); see also U.S.S.G. 4B1.2, ___ ____ comment. n.2(B) (explaining that "the conduct of which the defendant was convicted is the focus of inquiry"). Moreover, although the Pennsylvania statute includes a violent method of horse race fixing among the several methods identified therein, the state statute is mentioned only in the Travel Act counts. In turn, those counts, as charged in the __________________ indictment, by their very wording exclude that violent method, __________ for they are worded exclusively in terms of a non-violent alternative, subsection (a)(3) of the Travel Act, 18 U.S.C. 1952(a)(3). Thus, the passing mention of the Pennsylvania bribery statute is of no consequence anent the applicability of the career offender guideline. V. V. __ Conclusion Conclusion __________ Categorically speaking, racketeering, conspiracy to commit racketeering, travel in aid of racketeering, and sports 14 bribery all fail, in the circumstances of this case, to qualify as crimes of violence under the career offender guideline, U.S.S.G. 4B1.1. Hence, the government's claim that assaultive behavior was used to advance Winter's racketeering activities, even if true, is beside the point. We need go no further: although Winter, as the government asserts, may well have demonstrated a penchant for violence, he could not appropriately have been sentenced as a career offender. Affirmed. Affirmed. ________ 15