UNITED STATES of America, Appellee,

v.

Dennis HAROTUNIAN,
Defendant, Appellant.

No. 90–1393.

United States Court of Appeals,
First Circuit.

Heard Oct. 3, 1990.

Decided Dec. 5, 1990.

Rehearing Denied Dec. 20, 1990.

John C. McBride with whom Thomas Kerner and McBride, Wheeler & Widegren, Boston, Mass., were on brief, for defendant, appellant.

Richard E. Welch, III, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief, for U.S.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and ATKINS *, Senior District Judge.

SELYA, Circuit Judge.

On June 1, 1989, defendant-appellant Dennis Harotunian was indicted on 17 counts of transporting stolen property in interstate commerce, and as an aider and abettor. 18 U.S.C. §§ 2314, 2. The facts pertinent to the indictment are largely uncontested. Harotunian was comptroller and administrative manager for the Aesar Group, a New Hampshire-based division of Johnson Matthey Company. An internal audit for the fiscal year ended 31 March 1989 revealed that Aesar's accounts were grotesquely out of balance. After an investigation, it was determined that beginning in 1985 Harotunian wrote and signed more than 250 unauthorized checks payable, variously, to himself, to a company he owned, or to cash. These checks, totalling over $11,000,000, were written on Aesar's account with Morgan Guaranty Trust Company in New York.

On August 15, 1989, Harotunian pled guilty to all counts.[1] At sentencing, the district court purposed both to "depart upward ... because of the amount of money involved" and "to depart downward because of the defendant's substantial assistance [to the prosecution, after he was apprehended]." Because the upward departure was greater, the net result was the imposition of a sentence in excess of the guideline sentencing range (GSR). Harotunian appeals, contending that the district court erred in relying on the amount embezzled to justify an increase in his sentence and in failing to accord mitigating factors appropriate weight when calculating the departures.

Although we have some quarrel with the district court's terminology, we have none with its result. Because we are satisfied that the court carried out the substance of its sentencing responsibilities in an impeccable fashion, we affirm the judgment below.

I. HOW THE SENTENCE EVENTUATED

▮ Barring any *ex post facto* problem, a defendant is to be punished accord-

---

* Of the Southern District of Florida, sitting by designation.

1. Although appellant pled guilty, his disposition of the funds remains very much a mystery. Appellant at first claimed that he gambled away the entire sum. This claim was undermined, however, by his admission that he invested a portion of his wagering proceeds in a car, a boat, and some Florida land. Appellant's credibility was further eroded when (1) a distinguished accounting firm concluded that his gambling records documented losses of no more than $5,000,000, and (2) it was revealed that Harotunian had told a doctor that he gambled away "only" $9,000,000.

ing to the guidelines in effect at the time of sentencing. *See* 18 U.S.C. § 3553(a)(4); *United States v. Worthy*, 915 F.2d 1514, 1516 n. 7 (11th Cir.1990); *United States v. Adeniyi*, 912 F.2d 615, 618 (2d Cir.1990); *see also United States v. Wheelwright*, 918 F.2d 226, 228 (1st Cir.1990) (dicta). Appellant was sentenced on February 27, 1990, approximately three months after the November 1989 amendments to the guidelines took effect. But pursuant to U.S.S.G. § 2B1.1(b) (Nov.1989), appellant's base offense level (BOL) would have jumped by four extra levels (from 13 to 17) had the neoteric provisions been accorded controlling force. Because imposition of the amended guidelines would have resulted in a higher BOL, and thus raised *ex post facto* concerns, *see United States v. Suarez*, 911 F.2d 1016, 1021–22 (5th Cir.1990), the 1987 version of the guidelines, in effect at the time of the offense, was correctly utilized.[2] *See Miller v. Florida*, 482 U.S. 423, 429–35, 107 S.Ct. 2446, 2450–54, 96 L.Ed.2d 351 (1987). Neither side contests this conclusion.

Using the 1987 version, the GSR was tabulated in the following way. The court began with a base offense level of four pursuant to U.S.S.G. § 2B1.1(a); increased the BOL by 13 levels because the embezzlement involved "over $5,000,000," U.S.S.G. § 2B1.1(b)(1)(N); added two more levels since the scheme required more than minimal planning, U.S.S.G. § 2B1.1(b)(4); made a two level increase because defendant abused a position of trust, U.S.S.G. § 3B1.3; subtracted two levels for defendant's acceptance of responsibility, U.S.S.G. § 3E1.1(a); and arrived at a final adjusted offense level of 19. Neither party disputes these computations or that the GSR for counts 1–17, combined, was 30–37 months. *See* U.S.S.G. Ch. 5, Pt. A (Sen-

tencing Table) (offense level 19; criminal history category I).

Starting from this uncontroversial plane, both sides sought to convince the court to abandon the GSR. The government, while moving for a downward departure to reward Harotunian for his substantial assistance in tracking down other suspected criminals, U.S.S.G. § 5K1.1, asked the court for a net upward departure inasmuch as Harotunian had embezzled a sum substantially in excess of the highest amount mentioned in the applicable guideline. The defendant urged a downward departure based on (1) diminished capacity resulting from a claimed gambling addiction, *see* U.S.S.G. § 5K2.13, and (2) duress supposedly engendered by bookmakers and other nefarious characters, *see* U.S.S.G. § 5K2.12.

The district court elected to depart in both directions at once. Although discounting completely Harotunian's arguments anent diminished capacity and duress, the court essayed a two level downward departure for cooperation with the authorities and a four level upward departure to take account of the embezzlement's magnitude.[3] Appellant was then sentenced to 46 months in prison, plus a term of supervised release. This appeal followed.

## II. A DEPARTURE IS NECESSARILY SINGULAR

 As a threshold matter, we reject the characterization of appellant's sentence as one embodying dual departures—a characterization employed both by the district court and by the litigants.

Under the guidelines, there are two bases upon which a district court may ground a departure. The more common involves the existence of aggravating or mitigating circumstances of a kind, or to a degree, not considered by the Sentencing Commission.

---

2. Accordingly, except where otherwise specifically indicated, all references herein are to the guidelines as they stood prior to the 1989 amendments.

3. By conceptualizing the degrees of upward and downward departure in terms of offense levels within the guidelines and drawing analogies therefrom—a practice which we have approved

but not required, *see United States v. Ocasio*, 914 F.2d 330, 336 (1st Cir.1990)—the district court was able to posit a hypothetical sentencing range of 37–46 months, *see* U.S.S.G. Ch. 5, Pt. A (Sentencing Table) (offense level 21; criminal history category I), and depart upwardly to a point within, albeit at the high end of, this hypothetical range.

*See* 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. The other basis exists where the defendant has rendered substantial assistance to the government and the government acknowledges as much by filing a motion soliciting a downward departure. *See* 18 U.S.C. § 3553(e); U.S.S.G. § 5K1.1. In either instance, the court acquires discretion to depart, that is, it may then impose a reasonable sentence outside the GSR. *See* 18 U.S.C. § 3553(b) (the court "shall impose" a sentence within the GSR unless circumstances exist warranting a different sentence); 18 U.S.C. § 3553(e) (upon government's motion, court acquires authority "to impose" a sentence below the GSR to reward substantial assistance); *see also United States v. Pighetti,* 898 F.2d 3, 4 (1st Cir.1990) (the decision to depart is discretionary); *United States v. Diaz–Villafane,* 874 F.2d 43, 52 (1st Cir.) (same), *cert. denied,* —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). By definition, therefore, a departure constitutes the *imposition* of a sentence not within the GSR.

It follows, then, as night follows day, that the existence, direction, and degree of a departure can only be determined *after* sentence is pronounced. Thus, decisions to increase or decrease offense levels prior to the imposition of a sentence, or a court's assessment of countervailing considerations before passing sentence, can only be seen as interim calculations. Whether or not circumstances exist that might support departures in both directions, it is indisputable that the sentence finally imposed can only fall below, within, or above the GSR. In other words, in any given sentencing, there can be at most one departure, up or down—a phenomenon determined by the net result of all interim calculations. Hence, to describe a sentence as consisting of two departures, one up and one down, is necessarily inaccurate.

Let us be perfectly clear. The trial court can, of course, mull a myriad of factors before determining whether to depart and, if the question is reached, the departure's direction and degree. Some of the circumstances properly to be considered may well pull in opposite directions. *Cf. Ocasio,* 914 F.2d at 337 (in assessing extent of depar-

ture, sentencing court must take into account all known circumstances); *United States v. Newsome,* 894 F.2d 852, 857 (6th Cir.1990) (similar). When all is said and done, however, a "departure" occurs only if the sentence ultimately imposed is outside the GSR. And since the sentence is determinate—if it is a departure at all, the sentence will either be above the GSR (hence, an upward departure) or below the GSR (hence, a downward departure)—the departure cannot head in two directions at once.

■■■ We take some pains to make this clear because, potentially, more than semantic elegance is involved. Inasmuch as appellate rights in respect to departures are determined not by the judge's interim calculations but by the sentence actually imposed (i.e., the net product remaining after all interim calculations have been given effect), the judge's language should be sufficiently precise to mirror the reality of events. We explain briefly.

Assuming the absence of error in calculating the GSR or applying the guidelines, *see* 18 U.S.C. § 3742, a decision to depart can only confer a right of appeal on one party. A sentence below the GSR confers a right of appeal on the government, 18 U.S.C. § 3742(b)(3), while a sentence above the GSR confers a right of appeal on the defendant, 18 U.S.C. § 3742(a)(3). *See generally* Hutchison and Yellin, *Federal Sentencing Law and Practice* (1989) at § 9.4 ("the government may appeal a departure below, and the defendant a departure above, the applicable guideline range"). But in each case, the prime beneficiary of the departure—the government, if the sentence is higher than the GSR; the defendant, if the sentence is beneath the GSR— may not appeal. *See Pighetti,* 898 F.2d at 4.

This means, of course, that in a case like this one, where the sentence actually imposed was above the GSR, the only cognizable departure was upward and the only party entitled to appeal the departure decision was the defendant. *See* 18 U.S.C. § 3742(a)(3). Inasmuch as the government has not sought to appeal the "downward

departure" which the lower court ostensibly granted, no harm was done. Nevertheless, to avoid confusion in the future, we instruct the district courts, when imposing sentence, to avoid terminology suggestive of multiple departures within the contours of a single sentence. Sentences cannot be both fish and fowl in this sense, but must be singular.

## III. THE DENIAL OF A DOWNWARD DEPARTURE

■ Turning to the specifics of the appeal, Harotunian argues that the district court erred in refusing to depart below the GSR in light of his diminished capacity, the coercive conduct of his bookmakers, and the substantial assistance he rendered to the government. As our earlier discussion demonstrates, and as this circuit has repeatedly held, "a criminal defendant cannot ground an appeal on the district court's discretionary decision not to undertake a downward departure from the sentencing range indicated by the guidelines." *United States v. Ruiz*, 905 F.2d 499, 508–09 (1st Cir.1990). *Accord Ocasio*, 914 F.2d at 333; *United States v. LaGuardia*, 902 F.2d 1010, 1012 (1st Cir.1990); *United States v. Jimenez–Otero*, 898 F.2d 813, 815 (1st Cir. 1990); *Pighetti*, 898 F.2d at 4–5; *United States v. Tucker*, 892 F.2d 8, 10 (1st Cir. 1989). Therefore, we lack jurisdiction to consider appellant's claim that the district court should have imposed a sentence below the GSR.[4]

## IV. THE UPWARD DEPARTURE

We review the legitimacy of the district court's upward departure according to the tripartite analysis limned in *Diaz–Villafane*, 874 F.2d at 49, which we have summarized in the following manner:

First, we evaluate the circumstances relied on by the district court in determining that the case is sufficiently 'unusual' to warrant departure. If the stated circumstances pass muster, we proceed to the next rung and determine whether those circumstances were adequately documented. After the first two levels are climbed, the departure must be measured by a standard of reasonableness. On the third tier, the district court's leeway is substantial.

*United States v. Aguilar–Pena*, 887 F.2d 347, 350 (1st Cir.1989) (citation omitted).

### A. *The Ground for Departure.*

■ Loyal to our model, we first determine whether the circumstances relied upon were, as a matter of law, of a kind or degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines appertaining to Harotunian's criminal activity. *See* 18 U.S.C. § 3553(b). Our starting point coincides with the district court's stated reasons. *See Ocasio*, 914 F.2d at 334.

In this case, the decision to increase Harotunian's sentence was motivated principally by the fact that the amount embezzled was far in excess of the highest dollar amount mentioned in the 1987 version of U.S.S.G. § 2B1.1(b)(1). The construction of this guideline is of decretory significance. As applicable to appellant's crimes, the guideline utilized a schedule composed of 14 tiers. Each tier listed a range of monetary loss attributable to the offense of conviction and provided for corresponding escalations in offense levels as the dollar amounts grew. Tier "A," for example, addressed losses under $101 and imposed no upward adjustment in the BOL; tier "F" dealt with losses between $10,001 and $20,-000 and required a five level hike in offense level; tier "N" applied to losses "over $5,000,000" and called for a 13 level upward adjustment. At the time, tier "N" was the top rung on the section 2B1.1(b)(1) ladder.

The court decided that, because the $11,-000,000 actually embezzled was so much in excess of the $5,000,000 figure mentioned in section 2B1.1(b)(1)(N), the scale of Harotunian's malefactions constituted a degree of criminal self-enrichment not adequately considered by the Sentencing Commission in structuring the guideline. The court

---

**4.** We have also held that we lack jurisdiction to entertain a defendant's complaint as to the extent of a downward departure. *See Pighetti,* 898 F.2d at 4 & n. 1.

bolstered its decision in several ways. It looked to U.S.S.G. § 2F1.1(b)(1), which provides a similar (but not identical) schedule for losses brought about by crimes of fraud and deceit, paying particular heed to the Sentencing Commission's statement that:

> The adjustments for loss do not distinguish frauds involving losses greater than $5,000,000. Departure above the applicable guideline may be warranted if the loss substantially exceeds that amount.

U.S.S.G. § 2F1.1, comment. (n. 10). The court found further support for its view in *United States v. Chase*, 894 F.2d 488 (1st Cir.1990). There, the defendant was convicted of 15 counts of bank robbery comprising 15 possible offense units, but the multiple count adjustment provision was capped at a five level enhancement for defendants with "more than 5" offense units. *See* U.S.S.G. § 3D1.4. The trial court departed upward because the surfeit of offense units seemed not to have been adequately taken into account. We affirmed, ruling that the large number of robberies above the top unit range was a sufficiently unusual circumstance to justify an upward departure. *Chase*, 894 F.2d at 491. *See also Ocasio*, 914 F.2d at 334 (where highest criminal history category, VI, underrepresents gravity of defendant's criminal past, court may depart upward); *United States v. Brown*, 899 F.2d 94, 97 (1st Cir.1990) (similar).

We review *de novo* the determination that a particular circumstance will in theory support a departure. *See Chase*, 894 F.2d at 490; *Diaz–Villafane*, 874 F.2d at 49. In this instance, we agree with the court below that the magnitude of the amount embezzled—more than twice as high as the largest sum mentioned in section 2B1.1(b)(1)—was sufficiently unique and meaningful to warrant a departure. Although, as defendant points out, the application notes to section 2B1.1, unlike the notes to section 2F1.1 or the commentary to section 3D1.4, do not mention departure as an option should the amount of loss far exceed the highest figure mentioned, we view the notes as providing informal guid-

ance, not as a straightjacket. In this instance, we do not think that silence necessarily implies that the sentencing commissioners contemplated embezzlements involving sums substantially greater than $5,000,000 would frequently occur. To the contrary, we believe, as did the district court, that the massive extent of the embezzlement which appellant engineered was unusual enough to create a "meaningful atypicality," *United States v. Williams*, 891 F.2d 962, 967 (1st Cir.1989), thereby removing the case from the heartland for the offense of conviction. No more was required to pass the first prong of our tripartite test. *See Aguilar–Pena*, 887 F.2d at 350 (to warrant departing, circumstance must be such as to "distinguish[ ] the case from the mine-run for that offense").

### B. *Sufficiency and Reasonableness.*

■ Defendant pled guilty to the 17 counts brought against him and does not contest the finding that his course of conduct involved over $11,000,000. Consequently, there is no dispute regarding the sufficiency of the facts underlying the district court's decision to depart. We can, therefore, move directly to the third, and final, prong of the test, examining the scope of the departure to assess its reasonableness. "This third step involves what is quintessentially a judgment call." *Diaz–Villafane*, 874 F.2d at 49. At this stage, then, we must "read the Guidelines as envisioning considerable discretion in departure decisions ... [and] defer, within broad limits, to the trial judge's intimate familiarity with the nuances of a given case." *Id.* at 52.

Reasonableness is a flexible standard, determined with due regard "to the overall aggregate of known circumstances pertaining to the offense of conviction and to the offender who committed it." *Ocasio*, 914 F.2d at 337. While rejecting mechanical approaches to assessing the reasonableness of departure decisions, we recently stated that "the sentencing judge's resolution of the matter [must control] so long as the circumstances warranting the departure,

and the departure's direction and extent, are in reasonable balance," given the record as a whole. *Id.* We remain faithful to that principle today.

Here, the district court supported its net upward departure on substantially the following basis. The magnitude of the loss warranted a sizeable upward departure because, in view of the value of proportionality in sentencing, one who embezzles $11,-000,000 should not be punished the same as one who embezzles less than half that amount. Moreover, the court saw a need to deter those who might otherwise think that, after $5,000,000 had been taken, further raids on the exchequer were free. In measuring the degree of the indicated upward departure, the court considered the progression of offense levels vis-a-vis monetary amounts contained in the 1987 version of section 2B1.1(b)(1). The court also looked to a ready analogy; if the 1989 amendments covered this case, they would have dictated an upward adjustment to offense level 23 and created a GSR of 46–57 months.[5] Nor did the court stop there. Rather, it patiently painted the entire picture, factoring into the equation the defendant's assistance to the government and ratcheting down the hypothetical GSR by the equivalent of two offense levels in consideration of this circumstance. And at the bottom line, the court gauged the direction and degree of its ultimate departure by reference to the net of these interim calculations. *See supra* note 3.

Appellant mounts a spirited three-way attack on the lower court's protocol. First, he argues that the court was too niggardly in evaluating the worth of his substantial assistance. But we will rarely interfere with that type of judgment call, *cf. Pighetti,* 898 F.2d at 4 & n. 1 (defendant cannot challenge extent of district court's downward departure), and we see no reason to do so here.

Next, appellant asseverates that the court erred when it looked to the amended guidelines as one measure of the depar-

ture's extent. To be sure, if the court had grounded its upward departure solely on the fact that amended guidelines, not applicable to appellant, imposed a 17–level adjustment for embezzlements of $11,000,000, this argument might carry some persuasive force. But that was not the case; there is nothing in the court's sentencing statement to make us think that it treated the amended guidelines as controlling. Instead, the record makes clear that the court used the neoteric schedule merely for partial guidance to corroborate its belief that the magnitude of the embezzlement furnished a proper ground for a discretionary departure, and as a means of comparison in fixing the departure's extent. Ergo, we cannot fault the trier's approach. *See, e.g., Ocasio,* 914 F.2d at 336 ("a district court may well look to relevant analogies in the guidelines" when determining how much to depart).

Appellant's last plaint is equally unavailing. He says in effect that the district court gave too little weight to mitigating factors, i.e., the duress imposed by his bookmakers and his professed gambling addiction, in fashioning the net departure. Although we are without jurisdiction to entertain appellant's quest for a downward departure on the basis of these factors, *see supra* Part III, they may still be relevant in assessing the reasonableness of the upward departure. We made clear in *Ocasio* that mitigating circumstances, themselves insufficient to ground a downward departure, must nevertheless be "considered in fixing the degree of an upward departure." *Id.* at 337.

Here, unlike in *Ocasio,* the district court considered the mitigating circumstances and accorded them reasonable weight. With respect to appellant's contention that he acted out of duress, the court supportably found, as fact, that "there was no serious coercion in the form of any threat of physical injury prior to December 1988, when the defendant decided ... to withdraw from the [embezzlement] scheme." With respect to diminished capacity, the

---

**5.** This forecasted computation takes account of the other increases and reductions which the court utilized originally. *See supra* p. 1042.

court reasoned that, even if appellant did suffer from a gambling addiction (a diagnosis that the court viewed skeptically), the guidelines' general purpose of deterrence would be ill served by discounting appellant's sentence on this basis. After all, the court noted, such a dependence would be akin to drug or alcohol addiction—considerations to which the Sentencing Commission assigned little weight. *See, e.g.,* U.S.S.G. § 5H1.4; *see also United States v. Williams,* 891 F.2d 962, 965 (1st Cir.1989) (drug addiction not a proper basis for downward departure). Mindful of the deferential treatment which these kinds of judgments deserve, *Diaz–Villafane,* 874 F.2d at 52, we are unprepared to say that the court's decision to downplay appellant's claim of diminished capacity was unreasonable.

It would serve no useful purpose to paint the lily. We adhere to our oft-stated view that, on the third prong of the *Diaz–Villafane* test, a court of appeals should "not lightly disturb decisions to depart ... or related decisions implicating degrees of departure." *Diaz–Villafane,* 874 F.2d at 50. In this case, we have no warrant to intervene. The record reflects that the district court carefully considered the multiplicity of circumstances before it, performed the necessary balancing, and made meticulously detailed findings. We conclude, without serious question, that the court adequately examined the totality of the pertinent circumstances and acted reasonably in formulating a net upward departure equivalent to a two level increase in the offense level. "Under the aggregate of the relevant circumstances, the particular sentence imposed was ... proportionate to the offense of conviction." *Ocasio,* 914 F.2d at 338.

## V. CONCLUSION

We need go no further. Finding, as we do, that the district court did not err in the imposition of appellant's sentence, the judgment below will be

*Affirmed.*