June 9, 1994 UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

No. 93-1601

UNITED STATES OF AMERICA,

Appellee,

v.

JESUS M. QUINONES, a/k/a JESUS M. QUINONES-RODRIGUEZ

Defendant, Appellant.

ERRATA SHEET

The order of the court issued on May 20, 1994 is corrected
as follows:

On page 15, line 8, change F.2d to F.3d.

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1601

UNITED STATES OF AMERICA,

Appellee,

v.

JESUS M. QUINONES, a/k/a JESUS M. QUINONES-RODRIGUEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jose Antonio Fuste, U.S. District Judge]

Before

Selya, Circuit Judge,

Bownes, Senior Circuit Judge,

and Boudin, Circuit Judge.

Luis A. Plaza-Mariota, by appointment of the court, for

appellant.
Jose A. Quiles-Espinosa, Senior Litigation Counsel, with

whom Guillermo Gil, United States Attorney, and Miguel A.

Pereira, Assistant United States Attorney, were on brief, for

appellee.

May 20, 1994

SELYA, Circuit Judge. This appeal requires that we
SELYA, Circuit Judge.

explicate the circumstances in which consecutive sentences may be

appropriate under the sentencing guidelines and the methodology

for imposing such sentences.1 We then test the sentence imposed

below in light of these emergent principles.

I. DERIVATION OF THE SENTENCE

In late 1992, a federal grand jury indicted defendant-

appellant Jesus M. Quinones-Rodriguez (Quinones) on one count of

carjacking in violation of 18 U.S.C. 2119(1). The next month,

the grand jury returned a separate indictment charging appellant

with participating in a different carjacking episode. After the

district court consolidated the cases, appellant pleaded guilty

to both charges.

When no guideline exists referable to a particular

offense of conviction, a sentencing court must select, and then

apply, the most analogous offense guideline. See U.S.S.G.

2X5.1; see also United States v. Mariano, 983 F.2d 1150, 1158-60

(1st Cir. 1993) (describing mechanics of choosing analogy).

Because no guideline had yet been promulgated for carjacking, the

district court borrowed the robbery guideline, U.S.S.G. 2B3.1,

which specified a base offense level (BOL) of 20.

The district court then embarked upon a series of

1The November 1992 edition of the guidelines applies in this
case. See United States v. Harotunian, 920 F.2d 1040, 1041-42

(1st Cir. 1990) (explaining that the guidelines in effect at the
time of sentencing control unless ex post facto considerations
prohibit their use). Hence, all references herein are to that
edition.

3

interim calculations. It increased the BOL: by seven levels

because a perpetrator discharged a firearm in the course of one

carjacking, see U.S.S.G. 2B3.1(b)(2)(A); by two levels because

the perpetrators inflicted bodily injury on certain victims, see

id. 2B3.1(b)(3)(A); by four levels because the perpetrators

abducted two of the victims, see id. 2B3.1(b)(4)(A); and by one

level because the amount of loss, while not over $50,000,

nonetheless exceeded $10,000, see id. 2B3.1(b)(6)(B) (C). The

court added two levels to reflect the existence of separate

"groups" of offenses,2 see U.S.S.G. 3D1.4(a), after determining

that the carjacking charges were non-groupable, see U.S.S.G.

3D1.2(d) (excluding robbery from the operation of standard

grouping principles). And, finally, the court deducted three

levels for acceptance of responsibility, see U.S.S.G. 3E1.1(b).

The adjustments that we have catalogued produced a

guideline sentencing range (GSR) of 168 210 months.3 At the

sentencing hearing, the judge recognized that, in the "typical

case," concurrent sentences, rather than consecutive sentences,

are the norm; that, absent a departure, the guidelines would

generate a total punishment of no more than 210 months in prison

"for the whole case," that is, for both carjackings; and that, in

2Under the grouping rules, a single charged offense can
itself constitute a cognizable "group." See U.S.S.G. 3D1.2,

comment. (n.7). So it is here.

3Appellant's GSR is the product of an adjusted offense level
of 33, tabulated at criminal history category III. Appellant did
not object either to the district court's interim sentencing
calculations or to its compilation of the criminal history score.
Hence, we take as a given that the GSR is correctly calibrated.

4

a concurrent sentence paradigm, the total punishment could not

lawfully exceed the maximum term of imprisonment 15 years (180

months) that Congress had established for a carjacking

conviction, see 18 U.S.C. 2119(1). Nevertheless, the judge

eschewed the imposition of concurrent sentences. He reasoned

that, given appellant's "extreme conduct," the case was not a

"normal, typical guideline case"; that a 180-month maximum

sentence would not be "adequate to achieve punishment

commensurate to the offense conduct"; and, therefore, that

concurrent sentences were not an acceptable option.

The judge then departed upwardly and imposed a 336-

month prison term a term that, in the judge's words, "would be

the equivalent of consecutive sentences in both consolidated

criminal cases on the basis of the lower end of the guideline on

each [168 months]." Citing U.S.S.G. 5K2.8, the judge grounded

the upward departure in "[t]he heinous, the brutal, the cruel,

degrading treatment that was given to some of the victims." This

appeal followed.

II. QUESTIONS PRESENTED

Quinones attacks the sentences on three fronts. His

principal claim is that concurrent sentences are mandated in

multiple-count cases by dint of U.S.S.G. 5G1.2. Secondarily, he

asserts that, even if consecutive sentences are a theoretical

possibility, his conduct was not sufficiently "extreme" to

warrant so unorthodox an approach. All else aside, he

asseverates that the outcome here reflects an excessive,

5

unreasonable increase in punishment an increase that simply

cannot be justified. Although these forays are mounted with

great energy, they sputter and stall, with one possible

exception.

III. IMPOSING CONSECUTIVE SENTENCES

Appellant claims that U.S.S.G. 5G1.2 requires that he

be sentenced to concurrent terms of imprisonment for the two

carjackings.4 We explore this claim.

Section 5G1.2 anticipates that, in the usual case, at

least one count in a multiple-count indictment will be able to

accommodate the total punishment for the offenses of conviction;

4The operative language of section 5G1.2 provides that, in
multiple-count cases, "the sentence imposed on each count shall
be the total punishment," U.S.S.G. 5G1.2(b), and that:

(c) If the sentence imposed on the count
carrying the highest statutory maximum is
adequate to achieve the total punishment,
then the sentences on all counts shall run
concurrently, except to the extent otherwise
required by law.

(d) If the sentence imposed on the count
carrying the highest statutory maximum is
less than the total punishment, then the
sentence imposed on one or more of the other
counts shall run consecutively, but only to
the extent necessary to produce a combined
sentence equal to the total punishment. In
all other respects sentences on all counts
shall run concurrently . . . .

U.S.S.G. 5G1.2(c)-(d). While this case involves two separate
indictments, section 5G1.2 treats consolidated indictments in the
same manner as it treats a single indictment containing multiple
counts. See id., comment. (explaining that 5G1.2 applies to

"multiple counts of conviction . . . contained in different
indictments . . . for which sentences are to be imposed at the
same time or in a consolidated proceeding").

6

in other words, one count (if not more) will have a statutory

maximum steep enough to permit imposition of the total punishment

for all counts as the sentence on that one count. And when that

is so, "[t]he sentence on each of the other counts will then be

set at the lesser of the total punishment and the applicable

statutory maximum, and be made to run concurrently with all or

part of the longest sentence." U.S.S.G. 5G1.2, comment.

Here, the charges confronting appellant comprised two

counts of carjacking, both having the same 15-year statutory

maximum. Because this ceiling fell near the midpoint of the GSR,

the court could have followed the usual praxis, imposed a

sentence on each count that fit within both the statutory maximum

and the GSR, and run those sentences concurrently. The issue in

this case, however, is not whether concurrent sentences were

feasible clearly, they were but whether the lower court

possessed the power and authority to follow a different course

and impose consecutive sentences.

In arming ourselves to undertake this mission, the

guidelines are not our only ordnance. By statute, Congress

empowered district courts to utilize either concurrent or

consecutive sentences. See 18 U.S.C. 3584(a) (providing that

"if multiple terms of imprisonment are imposed on a defendant at

the same time . . . the terms may run concurrently or

consecutively"). In the same statute, Congress directed courts,

in choosing between concurrent and consecutive sentences, to

consider a specific set of factors, see 18 U.S.C. 3584(b)

7

(directing consideration of factors specified in 18 U.S.C.

3553(a)). These factors include the kinds of sentence and

sentencing ranges established for the offenses of conviction in

the guidelines. See 18 U.S.C. 3553(a)(4). This medley

harmonizes melodiously with 28 U.S.C. 994(a)(1)(D), a statute

that instructs a sentencing court to employ the guidelines in

determining "whether multiple sentences to terms of imprisonment

should be ordered to run concurrently or consecutively."

We start the task of integrating these various

provisions by recalling United States v. Flowers, 995 F.2d 315

(1st Cir. 1993), a case in which we confirmed that the guidelines

do not entirely eradicate a district court's sentence-structuring

power. See id. at 317. Rather, "[a] sentencing court may depart

from the Guidelines rule, provided it explains why the case

before it is unusual and lies outside the Guidelines

`heartland.'" Id. Although Flowers is not directly on point

there, we were addressing a court's ability to deviate from the

imperatives of U.S.S.G. 5G1.3, a guideline that deals with the

sentencing of defendants who are already subject to undischarged

terms of immurement we think that the same logic applies to the

closely related question of a district court's discretion vel non

under U.S.S.G. 5G1.2.

Extrapolating from the Flowers rationale, we hold that

a sentencing court possesses the power to impose either

concurrent or consecutive sentences in a multiple-count case. We

also hold, however, that this power, like so many other

8

sentencing powers in modern federal criminal practice, only can

be exercised consonant with the overall thrust of the sentencing

guidelines. To be specific, a sentencing court's decision to

abjure the standard concurrent sentence paradigm should be

classified as, and must therefore meet the requirements of, a

departure. It follows that a district court only possesses the

power to deviate from the concurrent sentencing regime prescribed

by section 5G1.2 if, and to the extent that, circumstances exist

that warrant a departure, see, e.g., U.S.S.G. 5K2.0.

This interpretation has much to commend it. In the

first place it meshes the operative statutes with the sentencing

guidelines a necessary integration inasmuch as the statutes,

read as a unit, dictate that a sentencing court consider the

guidelines and policy statements promulgated by the Sentencing

Commission. See 18 U.S.C. 3584(a) & (b), 3583(a). In the

second place, this interpretation makes explicit the rationale

underlying our recent opinion in United States v. Hernandez-

Coplin, F.3d , (1st Cir. 1994) [No. 92-2228, slip op.

at 20-21] (indicating that, once a sentencing court appropriately

determines to depart from the GSR in a multiple-count case,

consecutive sentences comprise a permissible method of

effectuating such decisions if the highest available statutory

maximum for any single count is too confining). In the third

place, this interpretation lands us in excellent company; the two

other circuits to have addressed the issue have decided it in the

same way. See United States v. Perez, 956 F.2d 1098, 1103 (11th

9

Cir. 1992); United States v. Pedrioli, 931 F.2d 31, 32 (9th Cir.

1991).

To recapitulate, a district court retains discretion

under 18 U.S.C. 3584(a) and the sentencing guidelines to order

that sentences be served consecutively notwithstanding the

dictates of U.S.S.G. 5G1.2. This discretion, however, is not

sui generis; it is simply another manifestation of the district

courts' departure power. Because this is so, a district court

can only impose consecutive sentences in derogation of U.S.S.G.

5G1.2 if it follows the accepted protocol for guideline

departures. See Perez, 956 F.2d at 1103; see also Pedrioli, 931

F.2d at 33 (explaining that "[t]he statutory reference to the

guidelines . . . incorporates the guidelines' own procedures for

departing from guideline recommendations"). The short of it is

that a court can impose consecutive sentences only by complying

with the three-step procedure first formulated in United States

v. Diaz-Villafane, 874 F.2d 43, 49 (1st Cir.), cert. denied, 493

U.S. 862 (1989), and later refined in United States v. Rivera,

994 F.2d 942, 950 (1st Cir. 1993).

IV. THE PROPRIETY OF THE DEPARTURE

It is against this backdrop that we turn to the

sentences imposed in this case. While the GSR topped out at 210

months, the court, using the consecutive sentence mechanism,

directed that appellant serve a total of 336 months in prison.5

5Because appellant pleaded guilty on two counts, each of
which carried a potential 15-year prison term, see 18 U.S.C.

2119(1), the maximum aggregate term available by statute was 30

10

Appellant assigns error.

We review a sentencing court's decision to depart by

means of a three-step procedure:

First, we evaluate the circumstances relied
on by the district court in determining that
the case is sufficiently "unusual" to warrant
departure. If the stated circumstances pass
muster, we proceed to the next rung and
determine whether those circumstances were
adequately documented. After the first two
levels are climbed, the departure must be
measured by a standard of reasonableness.

United States v. Aguilar-Pena, 887 F.2d 347, 350 (1st Cir. 1989)

(citing Diaz-Villafane, 874 F.2d at 49); see also United States

v. Rosales, F.3d , (1st Cir. 1994) [No. 92-1732, slip

op. at 15]; Rivera, 994 F.2d at 950. Our task is simplified

here, as the district court premised its upward departure on

appellant's "extreme conduct" in the commission of the offense

and extreme conduct is plainly a circumstance justifying an

upward departure.6 See United States v. Johnson, 952 F.2d 565,

years. See Hernandez Coplin, F.3d at [slip op. at 20]

(explaining that, in a multiple-count case, "the statutory
maximum is derived by adding up the maximums for each of the
counts [of conviction]").

6The guideline provision that explicitly encourages such
departures states in relevant part:

If the defendant's conduct was unusually
heinous, cruel, brutal, or degrading to the
victim, the court may increase the sentence
above the guideline range to reflect the
nature of the conduct. Examples of extreme
conduct include torture of a victim,
gratuitous infliction of injury, or
prolonging of pain or humiliation.

U.S.S.G. 5K2.8.

11

584 (1st Cir. 1991) (applying U.S.S.G. 5K2.8); United States v.

Ellis, 935 F.2d 385, 395 (1st Cir. 1991) (same). Thus, we are

concerned exclusively with the second and third steps of the

departure pavane.

A. Factual Justification.

Since carjacking by its nature is a violent felony,

see, e.g., U.S.S.G. 2B3.1 (defining carjacking as "the taking or

attempted taking of a motor vehicle from the person or presence

of another by force and violence or by intimidation"), particular

instances of carjacking can bear the weight of an upward

departure only when they involve conduct that is more "heinous,

cruel, brutal, or degrading to the victim(s)" than the sort of

conduct ordinarily associated with run-of-the-mill carjacking

cases. See United States v. Kelly, 1 F.3d 1137, 1143 (10th Cir.

1993); see generally U.S.S.G. 5K2.0. At the second step of the

Diaz-Villafane inquiry, appellate review of a district court's

determination that a case is unusual, and therefore warrants

departure, must take place "with full awareness of, and respect

for, the trier's superior `feel' for the case." Diaz-Villafane,

874 F.2d at 50.7 Insofar as it involves factfinding, this

7Of course, when "departure decisions reflect a
determination of the purpose of, or an interpretation of the
language in, a Guideline," plenary review is appropriate. United

States v. Doe, 18 F.3d 41, 43-44 (1st Cir. 1994) (citations and

internal quotation marks omitted). But no such questions
permeate this appeal. The relevant language of section 5K2.8 is
not problematic, for the guideline specifically "recognizes that
departure may be appropriate when the defendant's actions are
heinous, cruel, or brutal beyond the characteristics inherently

12

standard of review translates into what courts commonly call

clear-error review. See id. And thereafter, "due deference" is

accorded to the district court's application of the guidelines to

particular facts. 18 U.S.C. 3742(e).

In the case at bar, the judge premised the upward

departure on the unusually brutal, cruel, and degrading treatment

accorded some of the victims. Having reviewed the record with

care, we believe that the lower court's factfinding is entirely

supportable. Based on those findings, the circumstances of the

carjackings in which appellant participated are significantly

atypical. Consequently, a departure is warranted.

As previously noted, appellant pleaded guilty to two

carjacking charges. His argument against the finding of `extreme

conduct' is directed mainly to the November 8, 1992 incident. He

claims that he is insulated from responsibility for any excesses

that took place during that episode because he shot himself in

the leg, required medical assistance, and was elsewhere "when the

victims were robbed, beaten and shot."

This claim does not withstand scrutiny. Despite

appellant's self-inflicted wound, there is ample evidence that he

took part in the beatings. Statements of fact in a presentence

report are generally accorded evidentiary significance at

sentencing. See, e.g., United States v. Morillo, 8 F.3d 864, 872

(1st Cir. 1993) ("Facts contained in a presentence report

associated with the crime being sentenced." Kelly, 1 F.3d at

1143 (emphasis supplied).

13

ordinarily are considered reliable evidence for sentencing

purposes."). That proposition has special force where no

objection was lodged to the probation officer's account. See id.

at 872-73.

In this instance, the presentence report recites that

appellant entered the victims' vehicle, forcefully struck one man

on the head, aimed his gun at the second man, and threatened to

blow off his head. He then continuously pistol-whipped the first

victim while he robbed him of his jewelry. Appellant accepted

this account without particularized objection. This conduct

especially the incessant beating of the first victim is of a

piece with the examples enumerated in section 5K2.8 itself. See

supra note 6. It is emblematic of the very sort of sociopathic

behavior that section 5K2.8 sought to single out for special

attention.

Moreover, the basis for departure extends beyond the

November 8 incident; the court below also grounded its departure

on appellant's conduct during the episode that occurred two days

earlier. Appellant does not discuss his role in the first

carjacking. We can readily appreciate his diffidence: the

circumstances of that incident convey a grim message.

In regard to the events of November 6, the trial court

found that the victim, Munoz, had been exposed to a series of

"brutalities" for a period of over three hours; that he was

"mercilessly beaten with cocked handguns" by the assailants,

including appellant; that the carjackers constantly threatened

14

him with death, forcing him to beg for his life; that, at one

point, Munoz was coerced into putting his finger into the barrel

of a .357 magnum revolver, in a macabre sort of game; and that

the carjackers appeared to be enjoying themselves throughout.

These findings are all solidly rooted in the record.

Accordingly, we rule that the circumstances of the two offenses

and the facts relative to Quinones' participation in them justify

an upward departure.

B. Reasonableness.

We now reach the final rung on the departure ladder.

Our duty is clear: "once we have assured ourselves that the

sentencing court considered circumstances appropriate to the

departure equation and that those factors enjoyed adequate record

support, the direction and degree of departure must, on appeal,

be measured by a standard of reasonableness." Diaz-Villafane,

874 F.2d at 49; accord United States v. Doe, 18 F.3d 41, 44 (1st

Cir. 1994).

Noting that the sentences together represent an

increase of 126 months over the pinnacle of the GSR, or, put

another way, a 60% increase in the overall quantum of punishment,

appellant asseverates that so substantial a departure is

excessive, and, hence, unreasonable. This asseveration takes on

a special gloss because the district court made no effort to

explain the degree of departure. We recently confronted a

somewhat similar situation in Rosales. There, Judge Bownes

wrote:

15

Although sentencing courts have substantial
leeway with respect to the degree of a
departure, this freedom does not relieve a
sentencing court from explaining its ultimate
decision of how far to depart. Merely
explaining why a departure was made does not
fulfill the separate requirement of stating
the reasons for imposing the particular
sentence.

Rosales, F.3d at [slip op. at 18] (citations and internal

quotations marks omitted). Rosales builds on a long line of

circuit precedent to like effect. See, e.g., Rivera, 994 F.3d at

950; United States v. Ocasio, 914 F.2d 330, 336 (1st Cir. 1990).

Other signposts point in the same direction. See, e.g., Kelly, 1

F.2d at 1144; 18 U.S.C. 3553(c)(2).

To be sure, district courts need not be precise to the

point of pedantry in explaining judgment calls undertaken in the

course of the sentencing process. We have consistently rejected

a per se rule tying degrees of departure to the use of analogs,

see, e.g., United States v. Aymelek, 926 F.2d 64, 69-70 (1st Cir.

1991); and we have, on occasion, sanctioned departures in the

absence of a clear explanation for the designated degree of

departure, see, e.g., United States v. Ramirez, 11 F.3d 10, 14

(1st Cir. 1993). But the omission of an explicit explanation of

the scope of a departure is a practice that should be employed

sparingly. On appeal, we will overlook such an omission only if

the reasons for the judge's choice are obvious or if an

explanation can fairly be implied from the record as a whole.

Here, the record gives us pause. The extent of the

departure, whether viewed in absolute or relative terms, is very

16

great.8 The court does not indicate why it believed that a

lesser departure would be inadequate. Indeed, the judge's only

statement apropos of the degree of departure was to the effect

that a 336-month prison term would be equivalent to a sentence

for each offense at the low end of the GSR, served consecutively.

This comment sheds very little light and does not in any way

buttress the degree of departure.

Because we find ourselves unable to evaluate the

reasonableness of the court's departure equation without the

benefit of some elaboration, we must take suitable precautions.

As matters now stand, there is simply too great a risk that the

extra period of incarceration imposed on appellant was derived in

an arbitrary manner. Rather than requiring resentencing,

however, we think a less cumbersome alternative may suffice.

In United States v. Levy, 897 F.2d 596 (1st Cir. 1990),

we noted that, if ambiguities lurk in the sentencing record, a

court of appeals may essay a limited remand for clarificatory

purposes. Id. at 599 (citing illustrative cases); see also

United States v. Parra-Ibanez, 951 F.2d 21, 22 (1st Cir. 1991)

(remanding for clarification whilst retaining appellate

jurisdiction). We believe that the interests of justice can be

served fully by following a similar practice here. Hence, we

remand the matter to the district court with directions to

revisit the extent of the departure and either (a) vacate the

8The departure added over ten years of incremental
incarceration to appellant's total punishment, boosting the
length of sentence by some 60%.

17

sentence and conduct a new sentencing hearing, or (b) reaffirm

the sentence previously imposed, filing with the clerk of the

district court a written statement of its reasons for settling

upon, and adhering to, the degree of departure.9

In all events, the district court shall notify the

clerk of this court within twenty days of the date hereof as to

which option it chooses to pursue. In the meantime, we shall

retain

appellate jurisdiction. Of course, we express no opinion on the

appropriateness of the sentences previously imposed.

It is so ordered.
It is so ordered.

9The district court, in its discretion, may (but need not)
convene a hearing or invite arguments from counsel in attempting
to decide which option to pursue.

18