USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-2194

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 JAMES P. FLORENCE,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Edward F. Harrington, U.S. District Judge]

 Before

 Selya, Boudin and Lynch,
 
 Circuit Judges.
 
 

 J. Martin Richey, Federal Defender Office, for appellant.
 Ben T. Clements, Assistant United States Attorney, with whom
Donald K. Stern, United States Attorney, was on brief, for the
United States.

 
 
 May 4, 1998
 
 
 
 
 SELYA, Circuit Judge. Defendant-appellant James P.
Florence strives to convince us that the district court erred when
it ordered a federal sentence to be served consecutively to the
undischarged portion of certain state sentences. We are not
persuaded.
 I.
 Background
 In October 1993, the appellant asked a cousin who lived
in Kentucky to buy guns for him. The cousin complied. Florence
then brought the firearms into Massachusetts. At the time the
appellant purchased, possessed, and transported the weapons, he was
a convicted felon (manslaughter and unlawful possession of a
firearm).
 On February 15, 1994, masked men used one of the
transported firearms, a Norinco semi-automatic pistol, to rob a
pizza parlor in Rosindale, Massachusetts. A brigand armed with
that pistol shot a bystander, leaving him paralyzed. Some weeks
later, a state trooper attempted to stop the appellant for a motor
vehicle infraction. During an ensuing chase, Florence threw the
same Norinco pistol onto the median strip where the authorities
subsequently recovered it.
 Like the mills of the Gods, see George Herbert, Jacula
Prudentum (1651), the wheels of justice sometimes grind slow. 
Nearly three years elapsed before a federal grand jury charged the
appellant with transporting a firearm across state lines and being
a felon in possession of a firearm. See 18 U.S.C. 922(a)(3) and
(g)(1) (1994). Both counts of the indictment referred to the
Norinco semi-automatic pistol. The appellant eventually pled
guilty to these charges. The district court imposed a 60-month
incarcerative term for the transportation offense and a 96-month
term for the felon-in-possession offense. The court stipulated
that these sentences were to be served concurrently with each
other, but consecutively to all undischarged state sentences.
 At the time of the federal disposition (July 18, 1997),
the appellant was serving a two-year state sentence for possession
of heroin with intent to distribute (State Sentence No. 1), which
he had begun on April 17, 1996. Between April and August 1996, he
received (and elected not to contest) five separate citations for
probation violations in connection with (1) a charge of heroin
possession, (2) a charge of marijuana possession, and (3) three
separate motor vehicle offenses. In the same time frame, he also
pleaded guilty to several outstanding state charges, including two
separate charges related to possession of cocaine; a charge of
possession of heroin with intent to distribute; and a charge of
possession of marijuana with intent to distribute. The state
courts revoked the appellant's probation, imposed concurrent
sentences for the probation violations and the new offenses, and
specified that the new sentences (none of which exceeded one year,
and all of which expired on or before May 21, 1997) would run
concurrently with State Sentence No. 1. During the same period,
the state courts likewise revoked a one-year term of probation
stemming from an underlying narcotics offense and imposed a one-
year sentence (State Sentence No. 2) to be served "from and after"
the expiration of State Sentence No. 1.
 When Judge Harrington convened the federal disposition
hearing, the appellant had served approximately 15 months of the
total of three years' immurement levied against him for the
compendium of state offenses. The remaining time (roughly 21
months) constituted the undischarged portion of his state sentences
(Nos. 1 and 2).
 II.
 The Legal Landscape
 Appellate review of a district court's application of the
sentencing guidelines demands a bifurcated inquiry. The court of
appeals affords plenary review to the sentencing judge's assessment
of a guideline's legal meaning and scope, but reviews the judge's
factfinding only for clear error. See United States v. Brewster,
1 F.3d 51, 54 (1st Cir. 1993); United States v. St. Cyr, 977 F.2d
698, 701 (1st Cir. 1992).
 Ordinarily, federal sentencing proceeds according to the
version of the guidelines in effect at the time that sentence is
pronounced. See United States v. Harotunian, 920 F.2d 1040, 1041-
42 (1st Cir. 1990). An exception exists, however, if changes in
the guidelines between the date of the offense and the date of
disposition threaten the defendant with harsher treatment. In
deference to ex post facto concerns, the sentencing court then
customarily applies the version of the guidelines that obtained
when the defendant committed the crime. See id.
 USSG 5G1.3 covers the sentencing of defendants who are
subject to undischarged terms of imprisonment (federal or state). 
In the instant case, the government and the appellant agree that
the 1993 version of section 5G1.3, in effect on the date Florence
committed the federal offenses, should control. We therefore
abjure independent consideration of the point and proceed to
analyze the appellant's claim under the November 1993 edition of
the sentencing guidelines.
 We reproduce in the margin the text of this guideline as
it read in 1993. In general, this guideline contemplates three
somewhat different types of situations: subsection (a) deals with
federal offenses committed during the pendency or service of a
state sentence; subsection (b) deals with state sentences arising
out of conduct related to the offense of conviction (i.e., conduct
which must be taken into account when calculating the federal
sentence); and subsection (c) applies to all other federal
sentences imposed while the defendant is serving an undischarged
term of imprisonment. At the time of the federal disposition in
this matter, the appellant was serving a state term of imprisonment
for conduct wholly unrelated to his federal firearms offenses
(State Sentence No. 1), he had pending another undischarged state
term of imprisonment for unrelated conduct (State Sentence No. 2),
and he had perpetrated the federal offenses prior to the commission
of the state offenses that underlay those sentences. Consequently,
section 5G1.3(c) applies here.
 In its 1993 iteration, section 5G1.3(c) provides that, in
cases not covered elsewhere in section 5G1.3, "the sentence for the
instant offense shall be imposed to run consecutively to the prior
undischarged term of imprisonment to the extent necessary to
achieve a reasonable incremental punishment for the instant
offense." Former Application Note 3 placed a gloss on this
language, admonishing that "[t]o the extent practicable, the court
should consider a reasonable incremental penalty to be a sentence
for the instant offense that results in the combined sentence of
imprisonment that approximates the total punishment that would have
been imposed under section 5G1.2 (Sentencing on Multiple Counts of
Conviction) had all of the offenses been federal offenses for which
sentences were being imposed at the same time." In turn, section
5G1.2 directed that, in regard to multiple counts of conviction,
the sentence on each count should run consecutively to the extent
necessary to produce a combined sentence equal to the total
punishment when all offenses are considered together. See USSG
5G1.2(b)-(d).
 As if this litany of rules did not, in itself, create a
sufficient maze, we note that in 1993, as now, the procedure for
determining the offense level on multiple counts of conviction
required the sentencing court to "group" the counts to the extent
practicable. See USSG 3D1.2. Under the applicable grouping
rules, counts that "involve substantially the same harm" form a
single group. USSG 3D1.2. The court then calculates the offense
level for each count within each group, attributes to each group
the highest offense level of any count within it, compares the
groups to ascertain which has the highest offense level, considers
certain further adjustments (not relevant to our inquiry here), and
sentences the defendant based on that triage. See United States v.
Hernandez-Coplin, 24 F.3d 312, 319-20 (1st Cir. 1994).
 Interleaving this procedure with the analytic approach
envisioned by former Application Note 3 results in the following
paradigm for purposes of USSG 5G1.3(c). The district court must
first group the state convictions that undergird the undischarged
state sentences as if they were federal offenses and ascertain what
term of imprisonment those offenses would yield had they been
directly subject to the federal sentencing guidelines. The court
then must calculate the total sentence that the defendant would
have received had all the offenses been prosecuted federally (in a
single proceeding). If the projected sentence exceeds the sentence
that the defendant ordinarily would serve on the federal
convictions alone, the district court should compensate for this
disparity by running all (or some part) of the defendant's federal
sentence consecutively to the undischarged portion of his state
sentence. If, however, the projected sentence does not exceed the
time that the defendant ordinarily would serve on the federal
sentence alone, the district court should run the federal sentence
concurrently with the undischarged state sentence.
 This somewhat awkward model is not obligatory in every
case to which section 5G1.3(c) pertains. By its terms, former
Application Note 3 applies only "to the extent practicable," and,
thus, the paradigm that we have outlined should not be employed
blindly or when doing so "unduly complicates or prolongs the
sentencing process." USSG 5G1.3, comment. (n.3). Not
surprisingly, then, experience has shown that the paradigm applies
to "a good many of the cases likely to arise under subsection (c),"
United States v. Gondek, 65 F.3d 1, 3 (1st Cir. 1995), but not to
all such cases.
 III
 Discussion
 In this case, the district court sentenced the appellant
to a 96-month term of imprisonment, to be served consecutively to
the undischarged portion of his state imprisonment. On appeal,
Florence avers that the court failed to follow the method
prescribed by former Application Note 3 in determining whether his
federal sentence should run consecutive to, or concurrent with, his
state sentences. He further contends that, had the court employed
this methodology, it would have concluded that the federal sentence
should run concurrently with the undischarged portion of his state
immurement.
 To reach this result, the appellant purports slavishly to
follow the paradigm outlined above. He aspires to assemble all his
state offenses in one group and the two federal offenses of
conviction in another. But his efforts are somewhat less than
comprehensive: when constructing his state grouping, the appellant
only considers the narcotics convictions and ignores all the other
convictions, some because (in his view) they are subsumed under the
umbrella of the narcotics convictions and the rest particularly,
the vehicular offenses and the probation revocations because they
have no federal analogues and, in any event, are irrelevant. On
this basis, the highest offense level within the state drug-crime
group is 12 (for possession with intent to distribute cocaine). In
contrast, the federal offenses carry an offense level of 21. From
this premise, the appellant concludes that, by operation of former
Application Note 3, his total sentence should not exceed 96 months
(the apex of the guideline sentencing range prescribed for a
defendant who has an offense level of 21 and who, like Florence, is
in criminal history category VI). See USSG Ch.5, Pt. A (Sentencing
Table). A fortiori, the district court should have run his federal
sentence concurrently with the undischarged portion of his state
sentences.
 The appellant's approach is flawed in several respects. 
In United States v. McCarthy, 77 F.3d 522 (1st Cir. 1996), we noted
that when section 5G1.3(c) arguably applies, "a sentencing court
should initially look to [former Application] Note 3 for guidance
in calculating an appropriate incremental punishment, [but] it
nonetheless has discretion to follow a different course in a small
number of cases where adherence to Note 3 would be impracticable
and result in an inappropriate incremental punishment." Id. at
538. As the district court recognized, this is such a case. 
Former Application Note 3 does not tell a federal court how to
implement a grouping analysis where, as here, the state charges 
such as probation violations have no specific analogues in the
sentencing guidelines.
 This lack of a ready comparison not only renders
impracticable resort to the paradigm spawned by former Application
Note 3, but also ineluctably leads a rudderless sentencing court to
Chapter 7 of the Guidelines Manual. That chapter instructs that
"any sentence of imprisonment for a criminal offense that is
imposed after revocation of probation or supervised release
[should] be run consecutively to any term of imprisonment imposed
upon revocation." USSG 7B1.3, comment. (n.5). We already have
had occasion to construe the meaning of this commentary in a
context in which the defendant was serving an undischarged state
term of imprisonment for, inter alia, parole revocation. SeeMcCarthy, 77 F.3d at 538 (stating that this commentary suggests
that "imposing a wholly consecutive sentence was correct"); seealso United States v. Torrez, 40 F.3d 84, 87-88 (5th Cir. 1994)
(holding that USSG 7B1.3 favors the imposition of a consecutive
sentence when the existing sentence results from parole
revocation).
 Because we see no relevant distinction between parole
revocation and probation revocation, we hold that this aspect of
the McCarthy court's analysis controls here. At the time of the
federal disposition hearing, the appellant was serving a two-year
term of incarceration (State Sentence No. 1) that overlapped with
five concurrent sentences stemming from probation violations. 
Moreover, upon completion of this sentence, Florence forlornly
faced a further one-year term (State Sentence No. 2) based entirely
on a probation revocation. Hence, even had the district court
applied former Application Note 3, it could have run Florence's
sentence consecutively under USSG 7B1.3. See McCarthy, 77 F.3d
at 538.
 The appellant has a fallback position. He contends that,
save for the two-year sentence for distribution of heroin (State
Sentence No. 1) and the consecutive one-year sentence for a single
probation violation (State Sentence No. 2), all his other state
sentences had expired by the time Judge Harrington imposed the
federal sentence, and thus are irrelevant for federal sentencing
purposes. He argues, in effect, that the federal sentence should
at the very least run concurrently with the balance of State
Sentence No. 1 (roughly nine months), as the heroin offense,
simpliciter, has a ready federal analogue, and the overlapping
terms imposed in consequence of the five probation violations all
had lapsed. In his view, this left a "gap" into which the paradigm
contemplated by former Application Note 3 should have been
inserted.
 The appellant's prior state sentences are discussed in
Part I, supra. To assist the reader, we have prepared and
reproduce in the Appendix a chronological chart reflecting those
sentences. After studying this chart, we conclude that the
appellant's reasoning does not hold water.
 By its own language, former Application Note 3 creates a
paradigm that operates only "[t]o the extent practicable." We do
not think it is "practicable" to compute the appellant's federal
sentence in the manner that he suggests. After all, the one-year
from-and-after sentence imposed in response to the appellant's
latest probation violation (State Sentence No. 2) has no federal
analogue and, based upon the authorities previously cited, that
sentence ought not to be served concurrently with a subsequent
federal sentence. See McCarthy, 77 F.3d at 538-39; Torrez, 40 F.3d
at 87-88; see also USSG 7B1.3, comment. (n.5). Thus, were the
district court bound to adhere to the appellant's construct, it
would be forced to run the federal sentence concurrent with the
"gap" the nine-month undischarged portion of the state sentence
that the appellant was serving on the date of the federal
disposition and then run the federal sentence consecutive to
State Sentence No. 2 from and after the expiration of State
Sentence No. 1. See Appendix. Because this odd juxtaposition
would "unduly complicate[] . . . the sentencing process," USSG
5G1.3(c), comment. (n.3), use of the paradigm is not obligatory
here. Former Application Note 3 does not demand that a federal
sentencing court engage in elaborate mental gymnastics that far
exceed what is customary even within the convoluted federal
sentencing scheme.
 The appellant's riposte is that, even if the letter of
former Application Note 3 does not compel a concurrent or partially
concurrent sentence, the district court should have honored the
Note's spirit by running nine months of the federal sentence
concurrent with the undischarged portion of the appellant's state
incarceration. We agree that this would have been within the
district court's discretion but it is quite another thing to say
that the court was obliged to shape the federal sentence in that
way. The predominant objective of USSG 5G1.3(c) is "to achieve a
reasonable incremental punishment for the [offense of conviction]." 
Under the appellant's approach, the district court would be forced
to ignore a wide array of state offenses for which the appellant
received little reproof and, in the bargain, to extend leniency
based on a state sentence that already had absorbed the sting of
numerous other state sentences. On these facts, we cannot second-
guess the district court's seemingly wise determination that a
partially concurrent federal sentence would not achieve a
reasonable incremental punishment for the offense of conviction.
 United States v. Whiting, 28 F.3d 1296 (1st Cir. 1994),
much relied on by the appellant, does not compel a different
result. In Whiting, we ruled that the district court erred in
imposing a wholly consecutive federal sentence on a defendant,
Bartlett, without attempting to compute the punishment called for
by former Application Note 3. See id. at 1310-11. There are four
significant distinctions between Whiting and the case at bar. 
First, the offenses on which Bartlett's state sentence was based
had federal analogues, thus permitting simulation of federal
grouping practices. See id. at 1310-11. Second, Whiting did not
involve either prior state sentences imposed for probation
violations or an amalgam of overlapping state sentences. See id. 
Third, the appeal in Whiting arose in response to the district
court's mistaken belief that section 5G1.3 required either wholly
concurrent or consecutive sentencing, rather than permitting
partially concurrent or consecutive sentences where appropriate. 
See id. Finally, Whiting dealt with the 1991 version of USSG
5G1.3, and that version was amended in 1992 in a way that weakens
the appellant's reliance on it. See United States v. Redman, 35
F.3d 437, 439-42 (9th Cir. 1994) (discussing this revision).
 We need go no further. Refined to bare essence, the
guidelines call for the district court, when USSG 5G1.3 applies,
to impose a sentence that will result in a "reasonable incremental
punishment." Viewed in a practical, commonsense light, pairing the
appellant's federal sentence with the undischarged portion of his
state sentences would not accomplish this result. Because so many
of Florence's multiple state sentences ran concurrently, sentencing
him on the federal firearms charges to yet another concurrent term
effectively would have obliterated any penalty for those offenses. 
By contrast, stringing the federal sentence consecutively to the
undischarged portion of the state sentences effected what is
plainly, in these circumstances, a reasonable incremental
punishment. See McCarthy, 77 F.3d at 539.

Affirmed. APPENDIX

CHARGE
DATE OF
DISPOSITION
COURT
SENTENCE
APPROXIMATE
EXPIRATION
OF SENTENCE*

possession of
heroin with
intent to
distribute
April 17,
1996
Roxbury
Dist. Ct.
2 years
[State
Sentence 
No. 1]
April 17,
1998

probation
violations(2)
(underlying
offenses:
drugs)
April 17,
1996
Roxbury
Dist. Ct.
one year on
each
(concurrent)
April 17,
1997

possession of
cocaine
May 20,
1996
Hingham
Dist. Ct.
six months
(concurrent)
November 20,
1996

probation
violations(3)
(underlying
offenses:
vehicular)
May 21,
1996
Quincy
Dist. Ct.
one year on
each
(concurrent)
May 21, 
1997

probation
violation
(underlying
offense:
drugs)
May 21,
1996
Quincy
Dist. Ct.
one year
"from and
after"
[State
Sentence
No. 2]
April 17,
1999

possession of
heroin and
marijuana
with intent
to distribute
(2 charges)
June 25,
1996
Boston
Mun. Ct. 
nine months
on each
(concurrent)
March 25,
1997

possession of
cocaine
August 2,
1996
Plymouth
Dist. Ct.
six months
(concurrent)
February 2,
1997

*Calculations are before good-time credits, etc., if any.